■ Janos Farkas et al., Individually and as Parents of Adam Farkas, an Infant, Respondents-Appellants, v Zoltan Saary, Appellant-Respondent, and J. Leon Lascoff & Son, Respondent. [594 NYS2d 195] —Order of the Supreme Court, New York County (Stanley Sklar, J.), entered on or about April 10, 1992 which, *inter alia,* granted defendant J. Leon Lascoff & Son's motion for summary judgment dismissing the action against it and denied defendant Dr. Zoltan Saary's motion for summary judgment dismissing the complaint against him, affirmed, without costs.

On July 24, 1990, plaintiff Zsuzsanna Farkas gave birth to a son with a defect of the eye, referred to medically as left-sided microphthalmia, a condition in which the eye socket and eye are abnormally small, resulting in blindness to the affected eye. Plaintiffs commenced this medical malpractice action against the treating physician, Dr. Zoltan Saary, who prescribed progesterone to Mrs. Farkas while she was less than four months pregnant. Also named as a defendant was J. Leon Lascoff & Son, the pharmacy that dispensed the drug.

The complaint alleges that the child's defect was caused by use of progesterone during the first trimester of Mrs. Farkas's pregnancy. Malpractice is claimed to have resulted from Dr. Saary's failure to make a proper and adequate diagnosis of her condition, failure to disclose the risks of treatment and failure to obtain her informed consent. Defendant Lascoff &

Son is alleged to have failed to supply the necessary warnings and literature to Mrs. Farkas, as required by applicable Federal regulations.

Progesterone, a natural hormone, was originally believed to prevent miscarriages. Because Mrs. Farkas had a history of miscarriages, Dr. Saary prescribed the drug which Mrs. Farkas ingested between December 9, 1989 and January 24, 1990, six months before her son was born. In 1977, Food and Drug Administration ("FDA") guidelines required that the drug be dispensed with information concerning the hazards of using progesterone during pregnancy, specifically the increased risk of birth defects in children whose mothers take the drug during the first trimester. Federal regulations in effect in 1989 required the physician to provide patients with information about the benefits and risks of the drug. In either case, the potential risk to be warned against as a result of the administration of progesterone concerned "genital abnormalities" in the child. No side effects relating to vision were noted.

Following joinder of issue, defendants separately moved for summary judgment. Both conceded failure to provide any warnings whatsoever. Lascoff, however, urged that its failure was not a proximate cause of the infant's condition because microphthalmia was not a listed side effect of progesterone. Furthermore, Lascoff noted that an October 31, 1990 examination of the infant by Dr. Judith Willner, Director of Clinical Genetics at Mount Sinai Hospital, resulted in the medical conclusion that the infant's deformity was most likely a "sporadic [genetic] occurance [sic]" and that he "may potentially transmit this trait to his offspring". Lascoff also relied on the affidavit of Dr. Kwame Anyane-Yeboa, an expert in pediatrics and genetics who reviewed the record and medical literature, concluding that microphthalmia is not one of the anomalies associated with progesterone, no correlation having been demonstrated. The doctor also noted that microphthalmia is a recognized symptom of a genetic disorder. Finally, Dr. Jesse Bidanset, an expert forensic toxicologist, expressed the same opinion on the basis that the child's unilateral microphthalmia was not consistent with the teratological effects of chemical agents administered during the first trimester.

Dr. Saary sought summary relief on the ground that the applicable FDA regulation regarding notice to users of progesterone did not list eye or vision problems as a possible defect. Dr. Saary's counsel noted that when the FDA labelling and warning regulations were amended in January 1989 (54 Fed Reg 1243), a requirement to warn patients concerning the

risk of congenital limb and cardiovascular problems was deleted and a warning added concerning the possible occurrence of genital abnormalities. Defendant physician urged that the absence of any requirement to warn patients about possible vision defects refuted plaintiffs' allegation that a causal relationship exists between ingestion of progesterone and the defect to the infant plaintiff. Defendant Saary, a board certified obstetrician and gynecologist, submitted an affirmation together with the affirmation of Dr. Sherwin Kaufman, similarly an expert in obstetrics and gynecology, to the effect that there is no medical basis for the claim that the child's defect is related to the mother's use of progesterone.

In opposition, plaintiffs submitted, *inter alia,* the affidavit of Dr. Nicholas Criares, also an expert in obstetrics and gynecology who, upon review of the record and medical literature, stated it was "contraindicated to use progesterone to maintain a pregnancy where there is a threatened abortion", a fact known to gynecologists in 1989. He also asserted that progesterone is "associated with fetal malformations in * * * the special senses (including the eyes)".

Supreme Court dismissed the action against the pharmacy, which is predicated solely on a negligence theory, because the pertinent FDA regulation was not designed to warn patients of an eye defect, but was concerned with genital birth defects (citing *O'Leary v American Airlines,* 100 AD2d 959). With respect to the claim against Dr. Saary, however, the court found that the conflicting medical affidavits pose a question of fact concerning whether the eye defect is causally related to the use of progesterone. Consequently, the court denied Dr. Saary's motion for summary judgment and declined to order an immediate trial on the issue of causation on the ground that this is one of the major issues in the action.

The negligence action against J. Leon Lascoff & Son, which dispensed the hormone without the warning required by FDA regulations (54 Fed Reg 1243), was properly dismissed. The infant's vision defect was not the subject of the warning required by the regulation and, thus, no liability is attributable to the pharmacy's breach of that regulation *(see, O'Leary v American Airlines, supra).*

Summary judgment dismissing the complaint was properly denied as to Dr. Saary. The record demonstrates the existence of a conflict of opinion between the parties' respective medical experts as to whether the infant plaintiff's left-sided microphthalmia was proximately caused by defendant's prescribing

progesterone to the infant's mother during the first trimester of her pregnancy. Contrary to defendant's contention, plaintiffs' medical witness need not be a specialist in the pertinent field of medicine to qualify as an expert and to offer an opinion *(Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169, 175). Nor did Supreme Court abuse its discretion in declining to direct a framed-issue trial on the question of causation (CPLR 3212 [c]).

While we agree that the various expert opinions offered by defendant physician are superior in number and documentation to the opinion supplied by plaintiffs, the test on a motion for summary judgment is whether the pleadings raise a triable issue of fact *(Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169; *Di Sabato v Soffes,* 9 AD2d 297, 300). The function of the court is one of issue finding not issue determination *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Wiener v Ga-Ro Die Cutting,* 104 AD2d 331, 333, *affd* 65 NY2d 732), and statements made in opposition to the motion must be accepted as true *(Patrolmen's Benevolent Assn. v City of New York,* 27 NY2d 410, 415; *Cohn v Lionel Corp.,* 21 NY2d 559, 562). Plaintiffs are entitled to the opportunity to establish their claims at a trial and, if the expert testimony is insufficient to make out a prima facie case against defendant Saary, the action is subject to dismissal at the close of their evidence *(Monahan v Weichert,* 82 AD2d 102).

No basis exists to dismiss plaintiffs' lack of informed consent claim against defendant Saary given his conceded failure to issue any warning whatsoever concerning possible birth defects potentially caused by the hormone. If his patient can establish, at trial, her contention that a reasonably prudent person in her position would not have taken the medication had she been aware that it might cause a defect of any kind, a cause of action is made out (Public Health Law § 2805-d [3]). Concur—Carro, Kupferman and Rubin, JJ.

Sullivan, J. P., dissents in a memorandum as follows: I disagree with the majority only insofar as it affirms the denial of defendant Dr. Saary's motion for summary judgment dismissing the complaint against him, since, in my view plaintiff has failed to demonstrate that there is a question of fact as to whether the infant plaintiff's microphthalmia, a condition in which the eye and orbit are smaller than normal, and which, in the infant plaintiff's case, has resulted in complete blindness in the left eye, was caused by the mother's use of progesterone during the first trimester of pregnancy.

With respect to this question, the affidavit of defendant's

expert, Kwame Anyane-Yeboa, M.D., a physician board certified in the areas of clinical genetics and pediatrics, states that Dr. Yeboa's "research of the medical literature discloses no statistically significant correlation between the use of progesterone in the first trimester of pregnancy and microphthalmia" and that while "[t]here are certain birth defects which have been associated with the mother's use of progesterone in early pregnancy * * * [m]icrophthalmia * * * is not one of the anomalies which have been associated with progesterone. A correlation between the use of progesterone and microphthalmia has not been demonstrated." Dr. Yeboa also stated that "microphthalmia is a recognized symptom of genetic disorder which has been identified as an autosomal recessive trait" and that "[a]lternatively * * * the appearance of microphthalmia * * * may represent a spontaneous genetic mutation." In addition, the affidavit of Jesse H. Bidanset, Ph.D., a professor of pharmaceutical sciences and toxicology, states that "[t]here is no scientifically proven correlation between the use of progesterone in the first trimester of pregnancy and the infant-plaintiff's congenital defect, microphthalmia", and that "microphthalmia is not one of the defects which have been associated with progesterone use."

The plaintiffs' expert's only statements relating to causation by the use of progesterone are that such use during pregnancy "has been associated with fetal malformations in cardiovascular, muscular, skeletal, organ and nervous systems and in the special senses (including the eyes)" and that "where [microphthalmia] is in only one eye and is not systemic, the defect is traced to impaired nutrition to the ovum, cause[d] by the progesterone." While plaintiff's expert is a board-certified obstetrician and gynecologist, he does not purport to have any background or expertise in genetics or pharmacology. More significant, however, are the conclusory nature of his statements and the absence of any documentation of a causal connection between the use of progesterone during pregnancy and microphthalmia in the offspring. He is unable to cite a single authority, case report or other instance where progesterone has been linked to an ocular deficit. Indeed, FDA guidelines issued in 1989, prior to the time the drug was prescribed for plaintiff's mother, require warnings only with respect to the possibility of genital malformations in connection with progesterone use in the first trimester. Thus, it is apparent that plaintiff's expert's statements are nothing more than "conjecture and speculation[,] which are no substitute for proof." *(Monahan v Weichert,* 82 AD2d 102, 108.) As has often

been stated, conclusory statements are insufficient to defeat a motion for summary judgment *(see, e.g., West 90th Owners Corp. v Schlechter,* 165 AD2d 46, 50, *lv dismissed* 77 NY2d 939); the opposing party must lay bare its proof and demonstrate material issues of fact *(supra).* All that plaintiffs have demonstrated is that they have found an expert who, without any basis therefor, is willing to offer an opinion contrary to the well documented prevailing wisdom. Such an opinion is worthless.

In the absence of any question of fact as to proximate cause, plaintiffs' claim of malpractice based on Saary's prescribing the drug, progesterone, should be dismissed. Contrary to the majority's conclusion, this deficiency renders plaintiffs' cause of action for lack of informed consent equally infirm. In order to establish a physician's liability for failure to obtain a patient's informed consent to a course of treatment, plaintiffs must prove that the treatment was the proximate cause of the injury. *(See, Bernard v Block,* 176 AD2d 843, 848; Public Health Law § 2805-d [3].)

Accordingly, I would grant defendant Saary's motion for summary judgment dismissing the complaint.