■ MARIO J. FORTE, Individually and as Administrator of

the Estate of FRANCESCA FORTE, Deceased, Respondent, v IRWIN WEINER et al., Appellants. [606 NYS2d 220] —Order, Supreme Court, Bronx County (Anita Florio, J.), entered June 11, 1993, which denied defendants' motions for summary judgment dismissing the complaint, unanimously affirmed, without costs.

The IAS Court did not abuse its discretion in considering a supplemental affidavit submitted after the return date of the motion, any prejudice having been averted by the re-calendaring of the motion.

While defendants have demonstrated that plaintiff's expert does not have the reputation of defendants' eminently qualified expert pathologists, nevertheless, it is settled that a physician need not be a specialist in a particular field if he otherwise possesses the requisite knowledge to make a determination on the issues presented (*Joswick v Lenox Hill Hosp.,* 161 AD2d 352, 355; *Farkas v Saary,* 191 AD2d 178, 181), and that the weight to be attached to an expert's opinion is a matter for the jury. Thus, given that pancreatic cancer, which defendants assert was the cause of the decedent's death, is admittedly a rare and unusual event, and as the medical data require the interpretation of an expert, the issue of the cause of death, whether cancer of the liver or pancreas, must await resolution at trial.

Assuming, arguendo, that the decedent died of liver cancer, the adequacy of the warnings given has not been established as a matter of law (compare, *Martin v Hacker,* 83 NY2d 1; *Wolfgruber v Upjohn Co.,* 72 AD2d 59, *affd* 52 NY2d 768; *Eiser v Feldman,* 123 AD2d 583). The warnings issued must be gauged in view of the gravity of the harm—death. The 1975 package insert warned of "possible carcinogenicity" and called for "[c]lose clinical surveillance." The accompanying "WARNINGS" section listed "[h]epatic lesions * * * occasionally fatal," but failed to connect them to any increased risk due to dosage or age of the patient. Casting ambiguity over the earlier warnings was the advice that incidents of "hepatic lesions" associated with the use of oral contraceptives had not been "confirmed [or] refuted."

The 1977 insert described a correlation between long-term use and animal carcinomas of the liver. However, although the "WARNINGS" section described an increased risk of "hepatic adenoma," the entry under "HEPATIC ADENOMA" refers to "[b]enign" adenoma. The reference to "benign" tumors creates an ambiguity inconsistent with earlier warnings that may not

have alerted the prescribing physician to the risk of death from malignant liver cancer. The insert reported a "few cases of hepatocellular carcinoma," but went on to state that the "relationship of these drugs to this type of malignancy is not known at this time." The 1978 insert suffers from the same ambiguity, in that it reported a study finding a correlation between "benign hepatic adenoma" and high potency and duration.

Not until publication of the 1980 package insert did the manufacturer warn of a risk of "hepatocellular adenoma" with higher dosages and use over age 30. Again, however, the identical statement that there was not a known relationship between the "few" reported cases of hepatocellular carcinoma and use of oral contraceptives creates an ambiguity and obscures the nature of the risk, such that the matter may not be resolved as a matter of law. Concur—Carro, J. P., Ellerin, Kupferman and Ross, JJ.