■ EDWARD NAGENGAST, as Administrator of the Estate of MARY NAGENGAST, Deceased, Respondent, v SAMARITAN HOSPITAL, Appellant, et al., Defendants. [621 NYS2d 217] —Peters, J. Appeal from an order of the Supreme Court (Spain, J.), entered March 4, 1994 in Rensselaer County, which denied defendant Samaritan Hospital's motion for summary judgment dismissing the complaint and all cross claims against it.

In June 1986, Mary Nagengast (hereinafter Nagengast) underwent surgery for bladder cancer. After the surgery, her attending physician, defendant Anthony V. Passaretti, referred her to defendant K. Venkat Reddy for radiation therapy. In August 1986, Reddy saw Nagengast at his office located at defendant Samaritan Hospital and prescribed a course of radiation treatment. Nagengast subsequently received radiation therapy at Samaritan Hospital between August 18, 1986 and October 1, 1986 under Reddy's direction.

After the completion of radiation therapy, Nagengast experienced side effects which included diarrhea, vomiting and bleeding. She was hospitalized on numerous occasions and in November 1989 she, along with her husband, commenced the instant medical malpractice action against various doctors as well as Samaritan Hospital.[1] After issue was joined, Samaritan Hospital moved for summary judgment dismissing the complaint and all cross claims against it. The motion was denied and Samaritan Hospital appeals.

Addressing first the issue of vicarious liability, it is well settled that a hospital may be held vicariously liable for the negligence or malpractice of physicians who act in its employ or as its agent but not for such conduct by private physicians independently retained by the patient *(see, Hill v St. Clare's Hosp.,* 67 NY2d 72, 79; *Fiorentino v Wenger,* 19 NY2d 407, 414; *Sarivola v Brookdale Hosp. & Med. Ctr.,* 204 AD2d 245, 246; *Georges v Swift,* 194 AD2d 517; *Sledziewski v Cioffi,* 137 AD2d 186, 188). The premise for imputing liability is the

---

1. Due to Nagengast's death in September 1990, the complaint was later amended to reflect that the fact that plaintiff, Nagengast's husband, was substituted as the administrator of her estate.

notion of control *(see, Kavanaugh v Nussbaum,* 71 NY2d 535, 547; *Pace v Unity House,* 167 AD2d 739, 740; *Sledziewski v Cioffi, supra,* at 188). Hence, the fact that doctors are affiliated with a hospital and have been granted admitting privileges has been held insufficient to impose vicarious liability on the hospital *(see, Hill v St. Clare's Hosp., supra; Tuzeo v Hegde,* 172 AD2d 747; *Hicks v Fraser Clinic,* 169 AD2d 558). Yet, where a hospital maintains control over the manner and means of a doctor's work through the operation of an emergency room and the patient seeks medical care from the hospital instead of a particular doctor, courts have held the hospital vicariously liable for a doctor's malpractice regardless of the fact that the doctor is an independent contractor *(see, Noble v Porter,* 188 AD2d 1066; *Casucci v Kenmore Mercy Hosp.,* 144 AD2d 910; *Augeri v Massoff,* 134 AD2d 308; *Mduba v Benedictine Hosp.,* 52 AD2d 450; *cf., Campbell v Stevens Hosp.,* 118 AD2d 988, *lv denied* 68 NY2d 604).

Here, it is undisputed that Nagengast was specifically referred to Reddy for radiation therapy by her urologist, Passaretti, and that Nagengast independently retained Reddy for such purposes. Further, Reddy was not employed by Samaritan Hospital during the relevant period of time, but rather maintained privileges and affiliations with not only Samaritan Hospital, but also other area hospitals. Under these circumstances, Reddy was acting as an independent physician who had been specifically retained by Nagengast. Plaintiff has failed to present sufficient facts and admissible evidence to establish the necessary element of control. We therefore find no basis for imposing vicarious liability upon Samaritan Hospital.[2]

Addressing plaintiff's claim that Samaritan Hospital clothed Reddy with "apparent or ostensible authority to act on its behalf", we note that Samaritan Hospital correctly asserts that plaintiff did not adequately raise this issue below. However, we note parenthetically that regardless of Reddy's title of "associated attending physician" while at Samaritan Hospital and his use of Samaritan Hospital's stationary, such acts do not establish that Samaritan Hospital retained the requisite control over Reddy's activities to justify the imposition of vicarious liability on this theory. Moreover, unlike *Casucci v*

---

2. We note that the claims by plaintiff first raised in opposition to Samaritan Hospital's motion alleging that it did not use proper procedures in granting Reddy hospital privileges or have proper guidelines in place for the use of radiation facilities were not raised in the original pleadings nor are they discussed in plaintiff's brief on appeal. We therefore deem such issues to be abandoned *(see, Lynch v Adirondack Tr. Lines,* 169 AD2d 904, 905).

*Kenmore Mercy Hosp. (supra), Augeri v Massoff (supra)* and *Mduba v Benedictine Hosp. (supra),* upon which plaintiff relies, the patient here did not seek treatment from the hospital as a medical institution but rather sought treatment from a particular doctor based upon a referral. Further, we note that the record is bereft of evidence to show that representations were made by Samaritan Hospital that Reddy was its employee and that, by reason of such representations, Nagengast submitted herself to his care and treatment. Such proof has been found to be essential for vicarious liability to apply *(see, Hill v St. Clare's Hosp., supra,* at 79-81).

Samaritan Hospital further seeks the dismissal of plaintiff's claims of negligence based upon its alleged failure to properly diagnose and treat Nagengast and its failure to obtain her informed consent. Again, we note that "a hospital is protected from tort liability, when its professional staff follows the orders of private physicians selected by the patient" *(Pollicina v Misericordia Hosp. Med. Ctr.,* 158 AD2d 194, 198, *lv dismissed* 76 NY2d 934; *see, Toth v Community Hosp.,* 22 NY2d 255; *Hering v McShane,* 145 AD2d 683). The only recognized exception is " 'where the hospital staff knows that the doctor's orders are so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders' " *(Pollicina v Misericordia Hosp. Med. Ctr., supra,* at 199, quoting *Toth v Community Hosp., supra,* at 265, n 3). Hence, under such circumstances, the hospital would have a duty to intervene.

Here, Samaritan Hospital submitted a physician's affidavit attesting to the fact that the prescription and diagnosis of radiation treatment was not within the expertise of radiation technicians employed by Samaritan Hospital and that they treated Nagengast in accordance with the directives of her private physician. Moreover, sufficient evidence was presented indicating that there was no clear evidence of malpractice in Reddy's orders warranting intervention by the hospital staff. Affidavits submitted on this issue were consistent with the testimony that the adverse side effects experienced by Nagengast were associated with radiation treatment and not necessarily indicative of improper treatment.

Although Supreme Court found Samaritan Hospital to have met its prima facie burden, thereafter overcome by plaintiff's submission of a physician's affidavit, we find that such affidavit fails to demonstrate that the course of treatment recommended was so contraindicated by normal practice that the hospital staff would therefore have a duty to intervene. We

note that plaintiff's expert opinion was based upon Nagengast's unique internal condition which was due to pelvic surgery performed over 15 years earlier and the elongated shape of her bladder. There is absolutely no proof in the record that the staff at Samaritan Hospital was aware of this unique internal condition (cf., Witt v Agin, 112 AD2d 64, affd 67 NY2d 919). Hence, we find that plaintiff cannot assert a claim of negligence against Samaritan Hospital based upon its staff's adherence to the directives of Nagengast's private physician.

Finally, Samaritan Hospital was under no duty to obtain Nagengast's informed consent to the treatment since there was no reason to suspect malpractice (see, Fiorentino v Wenger, 19 NY2d 407, 417, supra; Sledziewski v Cioffi, 137 AD2d 186, 189, supra).

Mikoll, J. P., Crew III, White and Casey, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendant Samaritan Hospital, and the complaint and all cross claims dismissed against said defendant.