■ PETER A. PAYANT et al., Appellants-Respondents, v A. MICHAEL IMOBERSTEG, Respondent-Appellant, and CHAMPLAIN

VALLEY PHYSICIANS HOSPITAL, Respondent, et al., Defendant. [681 NYS2d 135] —White, J. (1) Appeal from an order of the Supreme Court (Dawson, J.), entered June 30, 1997 in Clinton County, which granted defendant Champlain Valley Physicians Hospital's motion for summary judgment dismissing the complaint against it, (2) appeal from the judgment entered thereon, (3) appeal from a judgment of said court, entered July 21, 1997 in Clinton County, upon a dismissal of the complaint against defendant A. Michael Imobersteg at the close of plaintiffs' case, and (4) cross appeals from an order of said court, entered April 7, 1998 in Clinton County, which partially granted defendant A. Michael Imobersteg's·motion to preclude plaintiffs from presenting certain evidence.

On June 4, 1990 in the City of Plattsburgh, Clinton County, plaintiff Peter A. Payant (hereinafter plaintiff) was involved in a severe motorcycle accident which resulted in the partial amputation of his lower right leg. Following the accident, plaintiff was taken to the emergency room at defendant Champlain Valley Physicians Hospital (hereinafter CVPH) where he was treated by defendant Krishan G. Gulati, a vascular surgeon, and defendant A. Michael Imobersteg (hereinafter defendant), an orthopedic surgeon. Instead of immediately amputating the leg, the doctors decided to try to salvage it by performing vascular surgery to restore blood flow and applying an external fixator device. Plaintiff remained in CVPH until June 12, 1990 when he was transferred to Fletcher Allen Medical Center in Burlington, Vermont. When plaintiff's leg was examined on June 15, 1990, a large amount of necrotic muscle was discovered which left no alternative other than to amputate the leg. Subsequently, plaintiffs commenced this medical malpractice action[1] claiming, *inter alia*, that defendant and CVPH failed to diagnose and treat a gross infection in his right leg. On the eve of trial in June 1997, CVPH moved for summary judgment which Supreme Court granted on the ground that vicarious liability could not be imposed upon the hospital. The case against defendant proceeded to trial but was never submitted to the jury because, after Supreme Court precluded the testimony of plaintiffs' two expert medical witnesses, it granted defendant's motion to dismiss predicated on plaintiffs' failure to establish a prima facie case. These appeals ensued.

We shall first consider plaintiffs' appeal from the order and judgment granting summary judgment to CVPH. Since plaintiff

1. Plaintiffs' action against Gulati was dismissed prior to trial and is not involved in this appeal.

entered the hospital through its emergency room, to prevail on its motion CVPH had to come forward with admissible evidence showing that it did not maintain control over the manner and means of defendant's work through the operation of its emergency room and that plaintiff sought treatment from defendant rather than from it (*see, Hill v St. Clare's Hosp.*, 67 NY2d 72, 79-81; *GTF Mktg. v Colonial Aluminum Sales*, 66 NY2d 965, 967; *Ryan v New York City Health & Hosps. Corp.*, 220 AD2d 734; *Nagengast v Samaritan Hosp.*, 211 AD2d 878; *Citron v Northern Dutchess Hosp.*, 198 AD2d 618, *lv denied* 83 NY2d 753). The record shows that CVPH did not satisfy its burden as it primarily supported its motion with the affidavit of its attorney which was without probative value due to his lack of personal knowledge of the facts (*see, Murray-Gardner Mgt. v Iroquois Gas Transmission Sys.*, 229 AD2d 852, 854). Consequently, Supreme Court erred in granting CVPH's motion for summary judgment.[2]

As mentioned, at trial plaintiffs proffered the testimony of two expert medical witnesses, Neil Crane, a board-certified infectious disease specialist, and Howard Balensweig, a board-certified orthopedic surgeon. Supreme Court precluded the testimony of Crane on the ground that he was not qualified to testify as to what the standard of treatment for an orthopedic surgeon was in 1990 based on the fact that he was an infectious disease specialist. Balensweig was not allowed to testify because he had not performed surgery since 1974 and could not readily recall the steps he had taken to keep abreast of current medical procedures and trends. It is unquestioned that Supreme Court had the initial responsibility of determining whether these witnesses, on the basis of experience and study, had the necessary standing to be regarded as experts (*see, Beck v Albany Med. Ctr.*, 191 AD2d 854, 857). In our view, Supreme Court exceeded its authority in fulfilling this role as it blurred the distinction between the witnesses' qualifications and the weight to be given to their testimony, which is an issue for the jury (*see*, 3 Bender's NY Evidence § 7.02 [1] [a]).

With respect to Crane, while the fact that he was not an orthopedic specialist could conceivably affect the weight of his testimony, it did not render it inadmissible as there is no requirement that a medical expert witness be a specialist in the same field as the parties to the lawsuit (*see, Fuller v Preis*, 35 NY2d 425, 431; *Farkas v Saary*, 191 AD2d 178, 181; *Joswick v Lenox Hill Hosp.*, 161 AD2d 352, 355; *see also*, Prince, Rich-

---

2. In light of this disposition, we need not consider whether CPLR 3212 (a) applies to this case.

ardson on Evidence § 7-315, at 482 [Farrell 11th ed]). Supreme Court also seemed to imply that, since Crane was not familiar with the practice of medicine in the Plattsburgh area, his testimony would contravene the "locality rule". Although the "locality rule" was promulgated 100 years ago, it is still extant (*see, Pike v Honsinger*, 155 NY 201, 209; *Riley v Wieman*, 137 AD2d 309, 314); however, the development of vastly superior medical schools and postgraduate training, modern communications, the proliferation of medical journals, along with frequent seminars and conferences, have eroded the justification for the rule. Thus, where, as here, a medical expert proposes to testify about minimum standards applicable throughout the United States, the locality rule should not be invoked (*see, Hoagland v Kamp*, 155 AD2d 148, 150-151; *Purtill v Hess*, 111 Ill 2d 229, 489 NE2d 867). Therefore, for these reasons, Supreme Court erred in precluding Crane's testimony.

We reach the same conclusion with respect to Balensweig's testimony because his alleged lack of skill or expertise goes to the weight of his testimony, not its admissibility (*see, Smith v City of New York*, 238 AD2d 500; *Behan v Data Probe Intl.*, 213 AD2d 439).

As there is no question that the exclusion of the experts' testimony substantially prejudiced plaintiffs as it prevented them from establishing a prima facie case, a new trial is warranted (*see, Misel v N.F.C. Cab Corp.*, 240 AD2d 294; *Khan v Galvin*, 206 AD2d 776). We note that the remittal of this matter for a new trial makes it unnecessary for us to reach the parties' remaining contentions.

Cardona, P. J., White, Yesawich Jr. and Peters, JJ., concur. Ordered that the order entered June 30, 1997 and judgment entered thereon are reversed, on the law, with costs, and motion denied. Ordered that the judgment entered July 21, 1997 is reversed, on the law, with costs, and matter remitted to the Supreme Court for a new trial. Ordered that the cross appeals from the order entered April 7, 1998 are dismissed, as moot.