OPINION OF THE COURT
Stanley L. Sklak, J.
In this product liability and medical malpractice action involving the use of the contraceptive Norplant, defendants Wyeth Laboratories, Inc., the distributor of the Norplant System, and its parent American Home Products Corporation (collectively, Wyeth), move for summary judgment pursuant to CPLR 3212.
This action arises out of plaintiff Leidy Ramirez’s (Ramirez) use of the Norplant System, a hormonal contraceptive that involves the subcutaneous insertion of six hormone-filled capsules by a healthcare provider, in this case a nurse practitioner, in the upper arm of the patient and provides up to five years of birth control protection.
The verified complaint alleges that in July 1993, at an office of defendant Planned Parenthood of New York City, Inc. (Planned Parenthood), six implants comprising the Norplant System were inserted into Ramirez’s left arm by Barbara Finney, a nurse practitioner. Finney, in 1989, received her New York State certification as a women’s health care nurse practitioner which enabled her to write prescriptions, except for controlled substances. This certification enabled her to prescribe and evidently to insert and remove Norplant. Finney testified that Wyeth’s representatives gave training and training material to her, including a model arm on which to practice insertions and removals. She also indicated that prior to the receipt of the model she never performed any surgical procedures involving incisions of the skin, and had no surgical training. Finney testified that she did not know whether any of the materials warned of certain risks of. removal including excessive scarring and chronic pain, that she was unaware of *766 whether any materials provided by Wyeth discussed long-term sequelae associated with Norplant removal, and that she never counseled women regarding the long-term sequelae. Finney also testified that Planned Parenthood’s service provider would assess a patient’s suitability for Norplant, and that in the plaintiffs case she (Finney) was the provider. Finney stated that if a patient had contraindications for Norplant she would consult with Dr. Irvin Rust, the medical director, but that otherwise no one other than the provider would decide whether a patient was a suitable candidate for Norplant. Finney further testified that the decision to prescribe and insert Norplant into the plaintiff was Finney’s alone. Due to various complaints on the part of the plaintiff the Norplant System was subsequently removed by Finney from Ramirez’s arm in January and March 1994.
Plaintiff asserts that she suffered from various injuries as a result of the Norplant. The injuries alleged include headaches, weight loss, hair loss, excessive scarring, and permanent damage to the left median brachial cutaneous nerve of the arm, resulting in sensory loss, pain, and weakness in the affected arm.
The verified complaint asserts seven causes of action, five of which are relevant to the instant motion: (1) negligence; (2) strict liability in tort for the manufacturing, marketing, distribution, and sale of a defective product; (3) breach of implied warranty of fitness and merchantability; (4) breach of express warranty of fitness and merchantability; and (5) fraudulent misrepresentation. In essence, Ramirez maintains that the Norplant System was a defective device in that Wyeth failed to properly warn healthcare providers and patients of the risks and side effects associated with its use, including the risk of permanent damage to the nerves in close proximity to the site of implantation, failed to inform healthcare providers of the proper implant site on the upper arm in light of the proximity of nerves in certain parts of the upper arm, and that Wyeth’s literature deceptively understated the risk and extent of potential scarring.
According to the medical records plaintiff, after insertion of the Norplant capsules complained, inter alia, of pain in her arm which ultimately led to her request to have the capsules removed. Plaintiff maintains that because the removal of several of the capsules was painful, the procedure was terminated and she had to return over a month later to have the remaining capsules removed. Following the removal of the capsules *767 the plaintiff allegedly experienced worsening pain, numbness, and weakness in her arm, in addition to the formation of a keloid scar. According to plaintiff’s treating neurologist, Dr. Adam Bender, based on his own examination and the results of an EMG, the patient suffered from a left medial brachial cutaneous neuropathy. Dr. Bender noted that the implant was done over the medial biceps region and that the scar on plaintiff’s arm showed that the operative site transversed the medial brachial cutaneous nerve. Dr. Bender concluded that the nerve was irritated during the implantation and was likely resected during the removal. In November 1997 plaintiff consulted Dr. Michael Bruch, a plastic surgeon, who found her to have hypertrophic and hyperpigmented scars caused by the Norplant surgery, but concluded that she was an inappropriate candidate for scar revision surgery in that her dark skin predisposed her to develop hypertrophic and hyperpigmented scars.
Defendants claim the directions and warnings provided to Planned Parenthood regarding the Norplant System fully and adequately warned of the side effects that plaintiff claims she suffered, and sufficiently instructed the healthcare practitioners as to the proper method of inserting and removing the Norplant capsules.
I. Timeliness of Motion
Before reaching the question of whether summary judgment is appropriate, it must first be determined whether the delay in filing the motion is justified by good cause. Ramirez filed a note of issue on September 9, 1997. The instant motion for summary judgment was filed on May 15, 1998. CPLR 3212 (a), effective January 1, 1997, states that a motion for summary judgment “shall be made no later than one hundred twenty days after the filing of the note of issue, except with leave of court on good cause shown.”
Due to the fact that CPLR 3212 (a) was only recently amended to include the 120-day requirement, minimal case law exists as to what constitutes “good cause”. Some courts have held that good cause “refers not to the alleged strength of the belated motion but to the reason (i.e., the ‘cause’) for filing the motion belatedly.” (John v Bastien, 178 Misc 2d 664, 666 [Civ Ct, Kings County 1998]; see also, Surace v Lostrappo, 176 Misc 2d 408, 410 [Sup Ct, Nassau County] [“Good cause is a written expression or explanation by the party or his legal representative evincing a viable, credible reason for delay, which, *768 when viewed objectively, warrants a departure or exception to the timeliness requirement”].) However, the Appellate Division has stated that in the context of CPLR 3212 (a), trial courts should “be afforded wide latitude with respect to determining whether ‘good cause’ exists for permitting late motions.” (Rossi v Arnot Ogden Med. Ctr., 252 AD2d 778, 779 [3d Dept 1998].)
Wyeth asserts Ramirez prematurely filed the note of issue before the completion of discovery, as Wyeth did not have an opportunity to conduct medical exams of Ramirez by its expert until February 1998. Ramirez counters that because the discovery obtained by Wyeth after the filing of the note of issue is irrelevant to the grounds for which it seeks summary judgment, there is no excuse for the late filing of the motion.
The court is convinced that good cause has been shown. As plaintiff acknowledges, the physical examinations of Ramirez agreed to by the parties were not completed until February 1998, and the final deposition in this action was not taken until April 1998. Moreover, Ramirez was ordered by another Justice, to whom the case had previously been assigned, to file the note of issue and certificate of readiness by September 9, 1997 or risk dismissal of the claims. In fact, Ramirez states that the note of issue and certificate of readiness were filed due to the “enormous pressure to place this action on the calendar” (O’Connor affidavit 8). Had Ramirez not faced dismissal of her action, it is most likely the note of issue would not have been filed at that time. Accordingly, because the note of issue was filed prematurely largely due to the directions of the court, it cannot be said that Wyeth has failed to establish good cause for the late filing of the summary judgment motion. (See, Gonzalez v United Parcel Serv., 249 AD2d 210 [1st Dept 1998] [trial court properly entertained summary judgment motion, despite its filing more than 120 days after the note of issue, since had note of issue not been prematurely filed, summary judgment motion would have been within the statutory time frame].)
II. Summary Judgment
It is well established that summary judgment may be granted only when it is clear that no triable issue of fact exists. (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) The burden is upon the moving party to make a prima facie showing that he or she is entitled to summary judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557, 562 *769 [1980]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979].) A failure to make that showing requires the denial of the summary judgment motion, regardless of the adequacy of the opposing papers. (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993].) If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact. (Alvarez v Prospect Hosp., supra, 68 NY2d, at 324; Zuckerman v City of New York, supra, 49 NY2d, at 562.) Although the papers submitted in support of and in opposition to a summary judgment motion are examined in a light most favorable to the party opposing the motion (Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997]), mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (Zuckerman v City of New York, supra, 49 NY2d, at 562.) Upon the completion of the court’s examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].)
III. Warnings and Instructions Regarding Norplant
Although a prescription drug is inherently an unsafe product, a defense from liability is provided to the manufacturer when the drug is properly prepared and accompanied by proper directions and warnings. (Martin v Hacker, 83 NY2d 1, 8 [1993].) The manufacturer’s duty is to warn of all potential dangers in its prescription drugs that it knew or should have known to exist. (Supra.) The warning must be correct, complete, and fully descriptive, and it must convey updated information as to all of the drug’s known side effects. (Supra, at 11; see also, Krasnopolsky v Warner-Lambert Co., 799 F Supp 1342, 1345-1346 [ED NY 1992] [manufacturer’s duty to warn of all potential dangers “is a continuous one, and requires that the manufacturer be aware of the current information concerning the safety of its product”].) The warning must also have clarity so that the language of the warning is “direct, unequivocal and sufficiently forceful to convey the risk”. (Martin v Hacker, supra, 83 NY2d, at 11.) Failure to come forward with any evidentiary facts demonstrating that a factual issue exists as to the warning’s adequacy merits the granting of summary judgment. (See, supra, at 15.) However, even if proper warnings are not given, where they would have been superfluous (e.g., the healthcare provider was independently aware of the *770 particular risk) no liability can ensue. (Glucksman v Halsey Drug Co., 160 AD2d 305 [1st Dept 1990].)
Wyeth asserts that its warnings and instructions provided to healthcare providers and patients were clear, thorough, and abundant and cites to numerous documents provided to plaintiff and/or healthcare practitioners. (See, Weber affidavit, exhibit G, transcript of videotape, at 29, given to healthcare providers [which recites that “(b)ecause the Norplant insertion and removal procedures occur entirely in subcutaneous tissue, if done correctly, there is minimal risk of involving a major vessel or nerve”]; Foresta affidavit, exhibit 20, Norplant’s patient information booklet [which listed a series of conditions reported by some women using Norplant which conditions were “probably” related to the use of Norplant, including hair loss, weight loss, change in appetite, headaches and skin discoloration at the implantation site “usually reversible”, and recited as one of various “warning signals”, but not as a side effect, “(a)rm pain”]; Weber affidavit, exhibit E, Q & A for patients [indicating that the implants leave a “very small scar * * * which is not noticeable in most women” and that in some women, discoloration occurs “but” usually disappears upon removal]; id., exhibit A, provider labeling [which recites that proper “insertion and removal should result in minimal scarring”, and that hyperpigmentation which occurs in some women “is usually reversible”].) Wyeth also asserts in its memorandum, relying on the affidavit of its expert David Archer, M.D., that since all surgical procedures carry the risk of scarring and nerve damage regardless of the level of care used by a healthcare provider and that since such risks are “known and obvious to the medical community”, even if its warnings were inadequate, no liability can attach.
In response plaintiff asserts that the written warnings provided to the healthcare provider and to her were watered down and that the material provided to her never informed her of the risk of permanent nerve damage. Indeed, the healthcare provider labeling does not even mention nerve damage or arm pain as an adverse reaction. Further, such risk is mentioned fleetingly in Wyeth’s video which seems to suggest that the risk is tied primarily to improper insertion. Plaintiff asserts through her expert, Dr. Anthony Lucci, and through information contained in a medical study that the product information was also defective in that it failed to properly advise the healthcare provider to avoid implanting the capsules in the area of the upper inner arm that contained various nerves. Wyeth *771 instructed healthcare providers merely to place the implants 8 to 10 centimeters above the elbow crease in the medial aspect of the upper arm, and it appears that Finney simply followed Wyeth’s instructions.
A genuine issue of material fact exists as to whether the warnings and instructions issued by Wyeth were adequate. Numerous courts have held that such a finding precludes the granting of summary judgment. (See, Montufar v Shiva Automation Serv., 256 AD2d 607, 608 [2d Dept 1998], citing Morrow v Mackler Prods., 240 AD2d 175, 176 [“ ‘[I]n all but the most unusual circumstances, the adequacy of warnings is a question of fact’”]; Harrigan v Super Prods. Corp., 237 AD2d 882, 883 [4th Dept 1997] [jury is to decide whether warnings or instructions are adequate]; Beyrle v Finneron, 199 AD2d 1022 [4th Dept 1993] [“The adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment”]; Bukowski v CooperVision Inc., 185 AD2d 31, 33 [3d Dept 1993] [same]; Erony v Alza Corp., 913 F Supp 195, 199 [SD NY 1995] [“Generally, whether a warning is adequate is an issue of fact to be determined at trial”].)
Initially it should be noted that the movants have not made a prima facie showing through a physician’s affidavit as to why plaintiff suffered her alleged injuries. There is no expert proof submitted by them indicating that the alleged injuries were due to incorrect insertion or removal of the capsules. Indeed Finney’s deposition testimony does not indicate that she had any difficulty in inserting or removing the implants, aside from plaintiff’s apprehension and anxiety. Also, no evidence has been set forth by movants indicating that during the relevant time period they were unaware of the risks of excessive scarring and nerve damage or that they were unaware that had they instructed healthcare providers to avoid certain areas of the upper inner arm, nerve damage could be avoided or minimized. While movants’ expert physician vaguely asserts that the “medical community” was aware that all surgical procedures present a risk of scarring and nerve damage, the expert does not specify whether the “medical community” refers solely to physicians such as himself or also to other types of healthcare providers such as nurse practitioners who may otherwise have been unfamiliar with the general risks of surgery. Moreover, movants’ expert does not address the risk of excessive scarring common in women with dark skin, such *772 as plaintiff, who are subject to keloid formation. In the instant case Wyeth was clearly aware that its product was being prescribed and implanted by those other than physicians. Thus, while inadequate warnings may be nonactionable were a physician to have been involved, a jury may find that such inadequate warnings are actionable in the case of a nurse practitioner’s involvement.
In addition, without deciding, while a physician may be aware of the general proposition that all surgery presents a risk of nerve injury, that does not mean that all physicians, especially in this instance where Wyeth should know that it would likely be dealing with a gynecologist who does not usually treat or operate on a patient’s arm, are fully familiar with the anatomy of the upper arm. Therefore it cannot be said that movants have established as a matter of law that their instructions as to the implantation site were proper or that they cannot be held liable even if they failed to adequately advise as to the risks of excessive scarring and nerve damage. Finally, the warnings provided about scarring, arm pain, and nerve damage cannot be said to be adequate as a matter of law. Therefore, because a factual dispute exists as to whether Wyeth’s warnings and instructions were adequate, summary judgment may not be granted. (See, Forte v Weiner, 200 AD2d 421, 423 [1st Dept 1994] [where adequacy of drug warnings has not been established as matter of law, summary judgment is inappropriate].)
Accordingly, the motion for summary judgment is denied.