OPINION OF THE COURT
Allan L. Winick, J.
Motion by defendant Myles Kobren, M.D. for summary judgment dismissing the complaint is denied.
Cross motion by defendants Winthrop University Hospital and Salvatore LoPresti, D.O. for summary judgment dismissing the complaint as to defendant Winthrop University is denied and as to defendant Salvatore LoPresti, D.O. is granted.
Motion by defendant Myles Kobren, M.D. and cross motion by defendants Winthrop University Hospital and Salvatore LoPresti, D.O. for a Frye hearing pursuant to Frye v United States (293 F 1013 [DC Cir 1923]) is denied.
CPLR 3212 (a) requires that a motion for summary judgment must be made 120 days after the filing of the note of issue unless a different date is set by the court. This deadline was met by defendant Myles Kobren, M.D., but was six days late by defendants Winthrop University Hospital and Salvatore LoPresti, M.D. The plaintiff contends that this cross motion is time barred.
The court may exercise its discretion in considering the six day late cross motion of defendants Winthrop University Hospital and Salvatore LoPresti, D.O. The delay was minimal and in the absence of prejudice, good cause warrants the consideration of the cross motion (Miranda v Devlin, 260 AD2d 451 [2d Dept 1999]). The motion for summary judgment by Winthrop University Hospital and Dr. LoPresti, therefore, is not time barred.
In this medical malpractice action, plaintiff seeks to recover for alleged improper treatment and monitoring of the plaintiff, Maria Lambadarios, during her labor and delivery of a premature infant twin, Ioannis Lambadarios. Defendant Dr. Myles Kobren was plaintiff Maria Lambadarios’ attending physician during her hospitalization at defendant Winthrop University Hospital.
In a medical malpractice action, a plaintiff, in opposition to a defendant physician’s summary judgment motion, must submit *88 evidentiary facts or materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). In satisfaction of this obligation, plaintiffs have submitted a physician’s affidavit wherein he opines that:
“There was an uncontrolled delivery, improper predelivery testing, failure to monitor and diagnose the mother and infant and failure to perform a cesarean type delivery. * * * [Defendants have deviated from good and acceptable medical practice in allowing a premature infant to undergo the pressure of a dilation cervix where the membranes are ruptured in a case of twins.”
In the view of this court, the affirmation creates a factual issue as to defendant Dr. Kobren’s and Winthrop University Hospital’s negligence such that the issues of malpractice and proximate cause should be submitted to the trier of fact (Lambos v Weintraub, 246 AD2d 356, 357-358 [1st Dept 1998]).
In support of Dr. LoPresti’s cross motion, he submitted an affidavit stating that his sole involvement with this patient was as a resident. He performed one exam on this patient at 10:00 a.m., five hours prior to delivery. He reported his findings to the attending Dr. Kobren who examined the patient half an hour after Dr. LoPresti’s one and only exam. The attending also examined the patient on numerous occasions thereafter.
There does not appear to be any feasible grounds that a jury could find liability against Dr. LoPresti. The uncontroverted evidence is that Dr. LoPresti, a chief resident in Obstetrics and Gynecology, saw the patient once in the morning of the day in question for a minor complaint at the request of the nursing staff. He examined the patient and reported his findings to the attending physician. That was Dr. LoPresti’s sole contact with the patient. He had no further involvement with the patient. As a matter of law, the allegations are dismissed against Dr. LoPresti.
However, there are sufficient factual questions that remain pertaining to the hospital’s role in this matter to warrant denial of summary judgment. A hospital is responsible for the malpractice of physicians or nurses in its employ or for the malpractice of an independent contractor, if they are held out as performing the service it offers (Kavanaugh v Nussbaum, 71 NY2d 535 [1988]; Mduba v Benedictine Hosp., 52 AD2d 450 [3d Dept 1976]). Clearly, the allegations against Dr. Kobren present factual issues for a jury to determine.
*89 The next question to be decided is whether plaintiff should be given the opportunity of establishing her claims of malpractice by showing through testimony of her expert that proper medical practice contraindicated the performance of a vaginal delivery on a patient such as the plaintiff.
A Frye hearing will be held to determine the admissibility of scientific evidence only where a party seeks to submit innovative “novel”' scientific, medical or technical evidence (Frye v United States, 293 F 1013 [DC Cir 1923]; People v Wernick, 89 NY2d 111 [1996]; Lara v New York City Health & Hosps. Corp., NYLJ, Oct. 4, 2000, at 26, col 6 [Sup Ct, NY County]; Sculpture City v Smooth-on Inc., NYLJ, Jan. 29, 2002, at 18, col 2 [Sup Ct, NY County]; Wahl v American Honda, 181 Misc 2d 396 [Sup Ct, Suffolk County 1999]; Selig v Pfizer, 185 Misc 2d 600 [Sup Ct, NY County 2000]). Expert testimony regarding “novel” scientific techniques, experiments or theories must satisfy the court that it has gained general acceptance in the field in which it belongs. General acceptance by the relevant community does not mean that it must be unanimously endorsed (People v Wernick, supra; People v Wesley, 83 NY2d 417 [1994]). Expert opinion is based upon a reasonable degree of medical certainty based upon facts known to the expert or in the record.
Plaintiffs medical witness does not have to be a specialist in the special field of medicine to qualify as an expert and to offer expert opinion (Farkas v Saary, 191 AD2d 178 [1st Dept 1993]; Kletnieks v Brookhaven Mem. Assn., 53 AD 2d 169, 175 [2d Dept 1976]).
Expert opinion involves testimony regarding the standard of skill or care ordinarily exercised by physicians in the community under like circumstances and whether the defendants’ conduct conformed thereto.
If the court finds that scientific evidence is generally accepted as reliable by the relevant scientific community, then the court must determine whether a proper foundation was made at trial to admit the evidence (People v Wesley, supra). The court must then determine whether the procedures utilized to form the basis of the opinion are reliable (People v Wesley, supra). The court does not determine whether the evidence is true; this is determined by the jury (People v Wesley, supra).
There is nothing novel about the theories proposed in this case. The instant case involves prenatal complications of delivery of 31 week premature twins with evidence of meco-nium stained amniotic fluid. After delivery the infant plaintiff newborn was transferred to the intensive care unit and was *90 discharged approximately one month thereafter. Plaintiffs bill of particulars alleges, among other things, that as a result of the defendants’ negligence, the infant suffered from bilateral periventricular leucomalacia, respiratory distress syndrome, sepsis and jaundice.
A medical malpractice case requires the admission of expert testimony (McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20 [1964]). A showing must be made that the witness is skilled in the profession to which the subject relates. The skill can be acquired either from study, experience or observation (Meiselman v Crown Hgts. Hosp., 285 NY 389 [1941]). No rule of precision has been applied as to the exact manner in which the skill and experience must be acquired (Meiselman v Crown Hgts., supra). A doctor may be qualified to testify based upon long observation or actual experience without an actual study (Meiselman v Crown Hgts., supra).
The expert may testify regarding opinions that reflect commonly accepted medical practice (Toth v Community Hosp. at Glen Cove, 22 NY2d 255 [1968]). The expert may testify based upon his or her educated opinion and may rely on circumstantial evidence (Gayle v City of New York, 92 NY2d 936 [1998]). An expert witness in a medical malpractice case must possess the requisite skill, training, knowledge or experience to insure that an opinion rendered is reliable (LaMarque v North Shore Univ. Hosp., 227 AD2d 594 [2d Dept 1996]).
The extent of the expert’s qualification is a subject for the jury on the question of the weight to be given to his or her testimony (Meiselman v Crown Hgts., supra). The function of the court is one of issue finding, not issue determination and statements made in opposition to a motion for summary judgment must be accepted as true (Farkas v Saary, 191 AD2d 178 [1st Dept 1993]; Weiner v Ga-Ro Die Cutting, 104 AD2d 331, 333, affd 65 NY2d 732 [1985]). Plaintiff is entitled to establish her claims at trial and if the expert is insufficient to make out a prima facie case, the action is subject to dismissal at the close of her evidence (Farkas v Saary, supra).
As such, defendants’ motion for a Frye hearing is denied.