Kosinski v Wladis (2025 NY Slip Op 06772)

Kosinski v Wladis

2025 NY Slip Op 06772

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

CV-24-1550
[*1]Shirley T. Kosinski et al., Appellants,
v
Edward J. Wladis et al., Respondents.

Calendar Date:October 17, 2025

Before:Clark, J.P., Pritzker, Lynch, Powers and Mackey, JJ.

The Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of counsel), for appellants.
Heidell, Pittoni, Murphy & Bach, LLP, Albany (Marshall Broad of counsel), for respondents.

Powers, J.
Appeal from an order of the Supreme Court (Christina Ryba, J.), entered April 26, 2024, in Albany County, which granted defendants' motion for summary judgment dismissing the complaint.
On May 8, 2016, plaintiff Shirley T. Kosinski fell down a flight of stairs in her home and struck her face against a door, resulting in fractures to several bone structures in and around her left eye socket. Since that date, she has undergone numerous surgeries, and the following is a brief background to those surgeries. On May 12, 2016, she underwent a surgery performed by Oluseyi Aliu, a plastic surgeon, during which an open reduction and internal fixation of a zygomaticomaxillary complex fracture was performed, an orbital floor fracture was repaired, with the placement of a plate on the orbital floor, and various fragments of bone were otherwise secured. After concerns arose following that initial surgery, Kosinski was referred to defendant Edward J. Wladis, an ophthalmologist employed by defendant Ophthalmic Plastic Surgery, PLLC (hereinafter collectively referred to as defendants).[FN1] A CT scan revealed that the orbital floor plate placed by Aliu had shifted and was sitting down in the sinus and that Kosinski's sinus appeared small. Based upon the latter observation, Wladis was concerned she may be suffering from silent sinus syndrome, which causes a blockage to the maxillary sinus and may result in its collapse. Therefore, Wladis referred Kosinski to Carlos Pinheiro-Neto, an otolaryngologist. It was determined that a joint surgery would be performed by Wladis and Pinheiro-Neto, during which Wladis would place a new plate in the orbital floor and Pinheiro-Neto would clean out the sinuses. This second surgery was ultimately performed on November 1, 2017. However, Kosinski subsequently informed Wladis that she had been having issues with double vision and, to remedy this issue as well as other complaints, Wladis performed additional surgeries on March 15, 2018 and July 3, 2018 to raise Kosinski's eyelid. Still unsatisfied, Kosinski contacted Aliu, who recommended that she seek treatment with Michael Grant, an ophthalmologist and plastic surgeon employed by the University of Maryland Medical Center. On December 28, 2018, Grant performed a surgery to remove and replace the previously inserted plates, and then, because these surgeries could not be completed simultaneously, another surgery in April 2019 was performed to address complaints regarding the appearance of her eyelid. Kosinski then sought out treatment by Guy Massry, a California-based plastic surgeon, who, in December 2020, performed a graft and cheek-lift. Massry also referred Kosinski for injections to address other issues that had arisen with her eyelids, including irregular eyelash growth.
In September 2019, prior to her treatment with Massry, Kosinski and her spouse, derivatively, commenced this medical malpractice action. Specifically, plaintiffs alleged that defendants committed medical malpractice [*2]in their unsuccessful attempts to treat the injuries to Kosinski's left eye, which included Wladis improperly performing each of the three surgeries occurring on November 1, 2017, March 15, 2018 and July 3, 2018, misdiagnosing her with silent sinus syndrome, failing to correct the double vision she experienced, which resulted in further treatment, as well as other ongoing issues with her left eye. Following joinder of issue, defendants moved for summary judgment dismissing the complaint and provided, among other things, an expert affirmation from Richard Dean Lisman, a board-certified ophthalmologist who opined that Wladis did not deviate from the standard of care and that any alleged deviation did not cause Kosinski's injuries. Plaintiffs opposed the motion and, in doing so, provided an affirmation from Grant, who opined to the contrary. Supreme Court granted defendants' motion finding that they had satisfied their prima facie burden and that plaintiffs failed to raise a material issue of fact in opposition. Plaintiffs appeal, and we reverse.
"A movant seeking dismissal of a medical malpractice claim bears the initial burden of presenting factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient" (Naylor v Ellis Hosp., 235 AD3d 1130, 1131 [3d Dept 2025] [internal quotation marks and citations omitted]; see Marshall v Rosenberg, 196 AD3d 817, 818 [3d Dept 2021]).
As stated above, in support of their motion for summary judgment, defendants provided an affidavit from Lisman, who affirmed that he had reviewed the medical records and was familiar with the applicable standard of care based upon his training and experience. Lisman opined that Wladis properly considered a potential diagnosis of silent sinus syndrome in view of Kosinski's treatment history, the risks associated with the treatment she had received previously and her symptoms and, based upon that concern, determined that the placement of a new implant on the orbital floor would first require treatment of the sinus. As a result, in Lisman's view, the joint surgery that was conducted on November 1, 2017 was within the standard of care. Lisman opined that the use of the Medpor implant during that surgery, as opposed to a 3D computer-printed orbital implant, was consistent with the standard of care because both options provide a customized fit, and that the decision to stack the second implant atop the first was based in reasonable, sound medical judgment because there was a possibility that removing the old plate could cause further trauma. Furthermore, Lisman opined that Wladis performed the appropriate intra-operative tests to ensure that the plate was well positioned and that the post-operative records indicate that the implant appeared to remain properly placed such that the decision to conduct lower left eyelid [*3]retraction with flap placement was the proper procedure to address Kosinski's continued complaints. Lisman concluded that Kosinski's eyelid retraction was likely the result of the approach that Aliu had utilized initially because an external incision carries the risk of turning the eyelid out, causing irritation and a sunken appearance. Lisman explained that Wladis' second surgery, which was ultimately performed on March 15, 2018, was conducted within the standard of care. After further complaints, Wladis performed a third surgery on July 3, 2018, as to which Lisman described the technique used was commensurate with the standard of care. Notably, according to Lisman, the subsequent surgeries, including a hard palate graft, were not required by the standard of care but were instead cosmetic. Lisman also affirmed that the claim that the implant placed by Wladis caused Kosinski to develop gingivitis was both unsupported by her medical records and unlikely.
This expert affidavit was sufficiently detailed and nonconclusory and, therefore, defendants met their prima facie burden demonstrating that Wladis did not deviate from the standard of care in his treatment of Kosinski and that any purported deviation did not cause her injuries (see Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1078 [3d Dept 2023]; D'Orta v Margaretville Mem. Hosp., 154 AD3d 1229, 1231 [3d Dept 2017]). "[T]he burden shifted to plaintiff[s] to present expert medical opinion evidence that there was a deviation from the accepted standard of care and that this departure was a proximate cause of [the] injur[ies]" (Schwenzfeier v St. Peter's Health Partners, 213 AD3d at 1080 [internal quotation marks and citation omitted]; see Goldschmidt v Cortland Regional Med. Ctr., Inc., 190 AD3d 1212, 1214 [3d Dept 2021]). "The medical opinion evidence submitted in opposition should not be speculative or conclusory but should address specific assertions made by the physician's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Lubrano-Birken v Ellis Hosp., 229 AD3d 873, 875 [3d Dept 2024] [internal quotation marks and citations omitted]).
Initially, although defendants concede this was in error, for purposes of clarity we briefly address Supreme Court's reliance on the fact that Grant practiced medicine in another state to ostensibly dismiss his opinions. Over 125 years ago in Pike v Honsinger (155 NY 201 [1898]), the Court of Appeals promulgated what has become known as the locality rule (see Nestorowich v Ricotta, 97 NY2d 393, 398 [2002]). Under this rule, "the prevailing standard of care governing the conduct of medical professionals demands that a doctor exercise that reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where the doctor practices" (Wulbrecht v Jehle, 89 AD3d 1470, 1470 [4th Dept 2011] [internal quotation marks, brackets, ellipsis and citations [*4]omitted]). While this rule has not been set aside, this Court has indicated that "the development of vastly superior medical schools and postgraduate training, modern communications, the proliferation of medical journals, along with frequent seminars and conferences, have eroded the justification for th[is] rule" (Payant v Imobersteg, 256 AD2d 702, 705 [3d Dept 1998]). With the rise of the Internet and the attendant ease with which information is disseminated, this is even more true today. "Thus, where, as here, a medical expert proposes to testify about minimum standards applicable throughout the United States, the locality rule should not be invoked" (id. [citations omitted]; see Scott v Santiago, 230 AD3d 933, 936 n 3 [3d Dept 2024]; Riley v Wieman, 137 AD2d 309, 315 [3d Dept 1988]).
In opposition to defendants' motion, Grant affirmed that he was familiar with the standard of care and, upon review of Kosinski's medical records, concluded that defendants had deviated from the standard of care in her treatment and that those deviations caused injuries requiring further medical intervention. Grant concluded that Wladis was incorrect in the diagnosis of silent sinus syndrome because Kosinski's injuries made it impossible for the type of pressure to build up in her sinuses that would cause such a condition. As to the placement of the implant during the November 2017 surgery, Grant opined that Wladis failed to accurately reconstruct the orbital floor by stacking the Medpor plate on top of the plate previously fitted and that, at the time it was performed, stacking implants was an antiquated and ill-advised approach because it is imprecise and can leave dead space in between the implants which may trap mucus and cause a secondary infection. Grant affirmed that this method departed from the standard of care. Further, Grant stated that Kosinski did not have lower eyelid retraction until Wladis' first surgery and that this first surgery caused the malposition of the eyelid which resulted in the second surgery in March 2018. Grant explained that Kosinski's worsening double vision was likely caused by orbital tissue that did not heal in the correct location, which flowed directly from Wladis' failure to properly place the implant in the previous surgery. Furthermore, Grant opined that Wladis departed from the standard of care by conducting the repairs of Kosinski's eyelid before properly repairing the orbital floor because he had to go through the eyelid to do so, disturbing the repairs he had previously made. Grant concluded that in doing these surgeries out of order, Wladis worsened the lower eyelid retraction, which then required further medical intervention. Grant countered Lisman's conclusions that these surgeries were the consequence of the injuries resulting from the original accident or Aliu's initial surgery, as well as that the subsequent surgeries performed by himself and Massry were cosmetic, instead opining that these later surgeries were the [*5]direct result of Wladis' negligence.
On a motion for summary judgment, the evidence must be viewed "in a light most favorable to the nonmoving party" and that party must be accorded "the benefit of every reasonable inference from the record proof, without [the court] making any credibility determinations" (Lubrano-Birken v Ellis Hosp., 229 AD3d at 875 [internal quotation marks and citations omitted]; see Marshall v Rosenberg, 196 AD3d at 823). The role for the court in this respect "is issue finding, not issue determination" (Matney v Boyle, 237 AD3d 1382, 1385 [3d Dept 2025] [internal quotation marks and citation omitted]). Supreme Court erroneously determined that plaintiffs' expert was too speculative and conclusory and, moreover, seemed to have weighed one expert's opinion against the other. In doing so, it made factual determinations that are to be left to the factfinder. Despite the court's determination to the contrary, plaintiffs satisfied their burden of raising a material issue of fact in opposition by providing an expert affidavit that delineated the applicable standard of care, opined that Wladis had deviated from that standard and concluded that those deviations caused Kosinski's injuries in a nonconclusory and nonspeculative fashion that also countered the specific claims made by defendants' expert (see Matney v Boyle, 237 AD3d at 1385; Lubrano-Birken v Ellis Hosp., 229 AD3d at 879; Schwenzfeier v St. Peter's Health Partners, 213 AD3d at 1084; compare Schultz v Albany Med. Ctr. Hosp., 238 AD3d 1286, 1289 [3d Dept 2025]). Defendants' motion for summary judgment dismissing the complaint should have been denied and, consequently, the order on appeal must be reversed and the matter remitted to Supreme Court for further proceedings.
Clark, J.P., Pritzker, Lynch and Mackey, JJ., concur.
Ordered that the order is reversed, on the law, with costs, and motion denied.

Footnotes

Footnote 1: Plaintiffs stipulated to the discontinuance of the action as to the additionally named defendants.