■ GEORGE PARSONS et al., Appellants, v CITY OF NEW YORK, Defendant, and 353-365 HOUSING DEVELOPMENT FUND COMPANY, INC., et al., Respondents.—Judgment, Supreme Court, New York County (Edward Lehner, J.), entered August 6, 1990, which, upon a jury verdict, found in favor of defendants dismissing the complaint, unanimously reversed, on the law, and a new trial ordered on the issue of "construction and installation" without costs or disbursements.

Plaintiff, a Con Edison employee, alleged that he sustained a back injury when he stepped on the cover of a sump well located in the basement of premises owned by defendant 353-365 Housing Development Fund Company, Inc. (HDFC) and maintained by defendant Urban Home Management Corporation. Plaintiff's witness testified that excessive rust had been allowed to accumulate over the years, as a result of a lack of proper maintenance, and that this condition caused two steel bars, supporting the cover over the sump well to corrode and collapse under plaintiff's weight. In contrast, defendants' expert testified that neither the rust condition nor improper maintenance caused the bars to collapse. Instead, this witness attributed the cause of the collapse to inadequate welding of the steel bars when the sump well was first constructed. Defendants' expert also testified that this structural defect was a hidden one which could neither be detected nor corrected through simple maintenance.

We find substantial merit in plaintiffs' assertion that they were deliberately deceived and surprised by a misleading "summary" of the intended testimony of defendants' expert. The "summary" read in pertinent part: "Dr. Grunes will testify that he inspected the metal plate subsequent to his retention after the commencement of this lawsuit; that the defendants could not know of the condition complained of with respect to the metal plate, and by the use of reasonable care would not have been able to discover and correct the condition complained of since the nature of the condition was such that it was not visible to the naked eye and that the incident complained of could not have been reasonably foreseen by the defendants."

CPLR 3101 (d) sets forth the obligation of disclosure with respect to experts. That section provides that "(i) [u]pon re-

quest, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify * * * and a summary of the grounds for each expert's opinion." (CPLR 3101 [d] [1] [i].)

We agree with plaintiffs that this so-called "summary" was misleading and did not adequately reveal the "substance of the facts and opinions" on which defendants' expert would base his testimony.

While the defendants assert that the plaintiffs are limited to the theory of negligence testified to by their own expert, and could not adopt the opinion expressed by the defendants' expert, they overlook the fact that the plaintiffs' complaint was broad enough to comprehend such theory of negligent installation. In relevant part, the complaint alleges two theories upon which negligence is predicated. It reads:

"Upon information and belief, the defendants, both jointly and severally, had created that dangerous and defective condition by placing the metal plate over the hole and then negligently and carelessly maintaining same * * *

"That the metal plate cover and welds used in support thereof were defective, loose, not properly and securely fastened, and in such a condition that it was likely to and did slide, move and give way when a person stepped upon it."

Furthermore, defendants did not comply with the requirements of CPLR 3101 with respect to the expert's disclosure. Although the defendants' expert inspected the site on March 27, 1989, the defendants did not mail their so-called "summary" of his testimony until April 26, 1990, a year later. That was received by plaintiffs' counsel five days before the scheduled start of trial. Defendants' report, which was admitted into evidence, contains no date or cover letter. There is a strong, if not overwhelming, inference, that the expert's report was intentionally withheld by the defendants until the trial.

The defendants waited for the completion of plaintiff's direct case, and then produced their own expert to testify that plaintiffs were proceeding on the wrong theory of negligence. This testimony was not fairly and accurately reflected in the "summary" given to plaintiffs and did not comply with the requirements of CPLR 3101 (d).

Moreover, when the trial court instructed the jury not to

consider evidence of defective construction, the defendants were effectively shielded from liability despite the absence of any affirmative proof as to when and by whom the defective condition was created.

Once the defendants' own expert acknowledged at trial that the collapse of the sump well cover was due to negligent construction and installation, the plaintiffs sought to establish that the defendants were the owners of the property at all relevant times. This information had become crucial to determine liability under the "construction and installation" theory of negligence adopted by the defendants' expert. The plaintiffs should then have been permitted to delve into the facts underlying that conclusion. Instead, the trial court barred the introduction of this evidence and instructed the jury to consider only the issue of negligent "maintenance." Neither expert was in a position to testify with any certainty when the sump well and its support were installed. However, plaintiffs contend that in order to prove defendants owned the property at the critical time, they were prepared to offer records from the New York City Department of Buildings relating to the rehabilitation of the building in question.

Plaintiffs also contend that there was construction activity by defendants which was ongoing in the basement area where the plaintiff, George Parsons, was injured after the defendants assumed ownership. Since a new Certificate of Occupancy was issued to defendants for substantial improvements after the building's initial construction, such evidence may well have connected the defendants to the installation and construction of the alleged improper welds used in the sump pit.

By precluding the plaintiffs from introducing any evidence of the defendants' ownership at the time of negligent installation of the welds; and then limiting the jury to find for the plaintiffs only as to the issue of negligent maintenance, the trial court permitted the defendants to present a one-sided version of their own theory of negligence and unreasonably restricted the authority of the jury. (See, *Szabo v Super Operating Corp.*, 51 AD2d 466.)

As a result of the violation of CPLR 3101 regarding expert disclosure, coupled with the erroneous evidentiary rulings relating to evidence of ownership, the defendants were able to confuse the issue of negligence as presented to the jury. Given the fact that both experts agreed that negligence was the cause of the accident and that the ensuing verdict was contrary to the weight of the credible evidence, a new trial is necessary, limited only to the extent indicated. (See, *Mount*

*Vernon Fire Ins. Co. v Trans World Maintenance Serv.,* 169 AD2d 519.) Concur—Sullivan, J. P., Carro, Rosenberger, Asch and Kassal, JJ.