■ Harvey S. Citron, Individually and as Administrator of the Estate of Sandy M. Citron, Deceased, Respondent, v Northern Dutchess Hospital, Appellant. [603 NYS2d 639] — Mercure, J. Appeals (1) from a judgment of the Supreme Court (Harris, J.), entered January 7, 1992 in Ulster County, upon a verdict rendered in favor of plaintiff, (2) from an order of said court, entered December 23, 1991 in Ulster County, which denied defendant's motion to set aside the verdict, and (3) from a judgment of said court, entered December 10, 1992 in Ulster County, amending the judgment entered January 7, 1992.

This medical malpractice action arises out of the death of plaintiff's wife, Sandy M. Citron (hereinafter decedent), while a patient at defendant on March 19, 1987. A review of the record reveals that decedent, then 26 weeks pregnant, contacted Richard Temple, her obstetrician, on that day. Decedent advised Temple, who was already at the hospital, that she was experiencing back pain, cramps and nausea. Eventually, after being advised that decedent's condition had worsened, Temple instructed plaintiff to bring decedent to the hospital emergency room. Decedent lost consciousness on the way to the hospital and did not have any vital signs when she was admitted to the emergency room. Decedent was resuscitated and stabilized by defendant's emergency room personnel, regaining a blood pressure of 88/50. Temple and Antonio Boba, an attending critical care specialist, determined that decedent was suffering from intra-abdominal bleeding. Temple then performed surgery on decedent and it was discovered that her uterus had ruptured. Temple estimated that decedent had lost at least one half of her total blood. Decedent survived for approximately four hours after the surgery and then died as a result of anoxia (lack of oxygen) to her tissues due to loss of blood.

Plaintiff then commenced this action against defendant and Temple, among others. Ultimately, the matter proceeded to trial. During the trial, Temple settled with plaintiff. After trial, a jury returned a verdict against defendant in the amount of $1.4 million and apportioned liability 70% against defendant and 30% against Temple. Supreme Court denied

defendant's motion to set aside the verdict and entered judgment against defendant in the amount of $755,040.03, reflecting apportionment of Temple's liability and reduction of the verdict to present value. Defendant now appeals.

Initially, defendant argues that plaintiff did not sufficiently plead his theories of negligence. We disagree. Plaintiff served three bills of particulars that narrowed the allegations of negligence against defendant to, *inter alia,* failing to provide adequate fluids and blood infusions, permitting decedent to bleed internally and allowing her platelet level to fall. At trial, plaintiff's expert, Sidney Siegel, testified that defendant was negligent by failing to have whole blood or platelets available to decedent or failing to make reasonable efforts to obtain these blood products, and was vicariously liable for the emergency room physicians at the hospital, who were negligent in failing to order whole blood or platelets. In our view, plaintiff's bills of particulars provided defendant with sufficient notice of the theory that defendant and its staff were negligent in failing to provide decedent with proper blood products. Furthermore, even assuming that plaintiff's pleadings did not sufficiently identify his theories of negligence, under the circumstances present here Supreme Court did not abuse its discretion in permitting the proof. Significantly, after receiving notice of the allegedly new theory, defendant had more than two weeks within which to obtain additional experts; defendant was also granted a 2½-day continuance during the trial *(see,* CPLR 3025 [b]; *Edenwald Contr. Co. v City of New York,* 60 NY2d 957, 959; *U.S. Cablevision Corp. v Theodoreu,* 192 AD2d 847; *see also,* Siegel, NY Prac § 237 [2d ed]).

Similarly, Supreme Court did not abuse its discretion in permitting Siegel to testify in support of plaintiff's theory that defendant was liable for failing to have blood products available or making reasonable efforts to obtain them. Although the testimony deviated from the expert witness statement, defendant was not deliberately deceived or misled by plaintiff's expert witness report *(cf., Parsons v City of New York,* 175 AD2d 783). Further, in these circumstances, where defendant was provided with ample time to obtain additional experts, there has been no demonstration of prejudice *(see,* CPLR 3101 [d] [1] [i]; *Putchlawski v Diaz,* 192 AD2d 444; *Lillis v D'Souza,* 174 AD2d 976, *lv denied* 78 NY2d 858; *McDougald v Garber,* 135 AD2d 80, 94-95, *mod on other grounds* 73 NY2d 246; *cf., Washington v 550 W. 158th St. Realty Corp.,* 137 AD2d 426).

Defendant next challenges Supreme Court's determination that it was vicariously liable for its emergency room physicians as a matter of law. Although generally a hospital may not be held liable for the malpractice of a physician who is not an employee of the hospital (see, e.g., Sledziewski v Cioffi, 137 AD2d 186, 188-189), a hospital may be held vicariously liable for the acts of independent physicians if the patient enters the hospital through the emergency room and seeks treatment from the hospital, not from a particular physician (see, Mduba v Benedictine Hosp., 52 AD2d 450, 453; see also, Noble v Porter, 188 AD2d 1066; Agustin v Beth Israel Hosp., 185 AD2d 203, 205-206; Soltis v State of New York, 172 AD2d 919). Here, the record demonstrates that decedent entered the hospital through the emergency room, defendant's employees called a number of physicians to attend decedent, decedent had no prior physician-patient relationship with any of the physicians in defendant's emergency room other than Temple, and neither decedent nor plaintiff requested or explicitly consented to treatment by any particular physician in the emergency room. In these circumstances, decedent "could properly assume that the treating doctors and staff of the hospital were acting on behalf of the hospital" (Mduba v Benedictine Hosp., supra, at 453).

Nor do we find persuasive defendant's contention that the jury verdict was against the weight of the evidence. The evidence does not preponderate so greatly in defendant's favor that the jury could not have reached its conclusions on any fair interpretation of the evidence (see, Frasier v McIlduff, 161 AD2d 856, 858). Siegel testified that decedent was suffering from consumptive coagulopathy and that her condition should have been treated with whole blood or at least with platelets because she needed restoration of her blood-clotting factors. Siegel stated that the failure to provide decedent with proper blood products was a substantial cause of decedent's death and that it is a deviation from accepted practice for a hospital of defendant's size not to have platelets or blood products either on hand or available within an hour. Although defendant presented expert testimony that platelets or other blood products would not have saved decedent's life because she had been in shock too long, the conflicting testimony of the experts presented issues of credibility which were for the jury to resolve (see, Widman v Horwitz, 189 AD2d 812).

Defendant's remaining arguments do not require extended discussion. Supreme Court adequately informed counsel of its proposed actions on defendant's requests to charge within the

meaning of CPLR 4110-b prior to defendant's summation. Moreover, given the extensive nature of the charge conference and defendant's failure to identify any specific error on appeal, defendant has not shown sufficient prejudice to warrant reversal (see, Spadaccini v Dolan, 63 AD2d 110, 122-123). Finally, the jury verdict did not materially deviate from reasonable compensation.

Weiss, P. J., Mikoll and Mahoney, JJ., concur. Ordered that the order and judgments are affirmed, with costs.