ASHLEY KING, Respondent, v ROBERT MITCHELL et al., Defendants, and CAYUGA MEDICAL CENTER AT ITHACA, Appellant. [819 NYS2d 169]—

Spain, J. Appeal from an order of the Supreme Court (Mulvey, J.), entered August 30, 2005 in Tompkins County, which denied a motion by defendant Cayuga Medical Center at Ithaca for partial summary judgment.

In this action plaintiff seeks to recover damages for injuries sustained allegedly due to the negligence of her anesthesiologist, defendant Robert Mitchell. The sole issue on appeal is whether defendant Cayuga Medical Center at Ithaca can be held vicariously liable for Mitchell's allegedly tortious actions.

After her family physician detected a tumor in plaintiff's chest cavity, he referred her to a neurosurgeon who in turn referred her to general surgeon David Schwed. Plaintiff's mother, Susan King, rendered the medical decisions for then 17-year-old plaintiff. King accepted Schwed's recommendation that plaintiff undergo surgery and, with King's consent, Schwed admitted plaintiff to Cayuga on February 4, 2003 and performed the surgery to remove the tumor. At Cayuga prior to the surgery, Mitchell introduced himself to plaintiff and King as the anesthesiologist who would be providing anesthesia during plaintiff's surgery. Mitchell was not a Cayuga employee, but a partner in an independent group of anesthesiologists who had privileges to practice at Cayuga. Following the surgery, plaintiff developed surgical hematoma and, as a result, is a permanent paraplegic.

On plaintiff's behalf, King commenced this action alleging that plaintiff's injuries were caused by the negligence of Mitchell, his practice and Cayuga. After plaintiff reached the age of majority, the complaint was amended to name her the party plaintiff and to add a claim for vicarious liability against Cayuga

on the theory that Mitchell, the anesthesiologist, was an ostensible agent of Cayuga. Cayuga moved for partial summary judgment dismissing the vicarious liability cause of action. Supreme Court denied the motion, finding that a genuine issue of material fact exists as to whether an apparent or ostensible agency relationship arose between Mitchell and Cayuga, such that Cayuga may be held vicariously liable for the alleged negligence of Mitchell. On Cayuga's appeal, we now reverse.

As a general proposition, "[a] hospital may not be held for the acts of an anesthetist who was not an employee of the hospital, but one of a group of independent contractors" (*Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]). Vicarious liability for medical malpractice may be imposed, however, under an apparent, or ostensible, agency theory, "or, as it is sometimes called, agency by estoppel or by holding out" (*id.*). " 'Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority' to act on behalf of the principal" (*Searle v Cayuga Med. Ctr. at Ithaca*, 28 AD3d 834, 836 [2006], quoting *Hallock v State of New York*, 64 NY2d 224, 231 [1984]). Also, the third party must reasonably rely upon the appearance of authority created by the principal (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 252 n 3 [2002]; *Hallock v State of New York, supra* at 231). Finally, the third party must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal (*see N.X. v Cabrini Med. Ctr., supra* at 252 n 3; *Hill v St. Clare's Hosp., supra* at 82). To state a viable claim based on ostensible agency, it was thus necessary for plaintiff to set forth facts sufficient to support the conclusion that Cayuga, as opposed to Mitchell, engaged in some misleading conduct upon which plaintiff and King reasonably relied when they decided to accept medical services from Mitchell (*see Merrell-Benco Agency, LLC v HSBC Bank USA*, 20 AD3d 605, 608 [2005], *lv dismissed and denied* 6 NY3d 742 [2005]; *see also Ford v Unity Hosp.*, 32 NY2d 464, 473 [1973]).

The facts which plaintiff alleges to support her claim that Cayuga was "holding out" Mitchell as its employee or agent are that (1) the questionnaire and consent forms related to anesthesia were printed on forms with Cayuga's logo, (2) such forms did not affirmatively state that Mitchell was not a Cayuga employee, and (3) Cayuga's Web site describes Cayuga as having an anesthesiology department, and includes contact information for Mitchell at Cayuga. Inasmuch as plaintiff failed to raise this last issue before the trial court and, in any event, no evidence

exists that plaintiff or King ever accessed Cayuga's Web site to obtain information on Mitchell, the Web site cannot provide a foundation for conduct upon which they reasonably relied (*see N.X. v Cabrini Med. Ctr., supra* at 252 n 3).

Moreover, although it would—unquestionably—be preferable for hospitals to clarify in their informational and consent forms the status of those physicians enjoying privileges at the hospitals, no authority suggests that Cayuga was obligated to affirmatively disclaim Mitchell as an employee in order to avoid the creation of ostensible agency. Although plaintiff did not independently seek out Mitchell's services, his assumption of the role of her anesthesiologist and presence in Cayuga is not, under the circumstances presented, sufficient by themselves to suggest that Cayuga was holding him out as an employee (*see Sarivola v Brookdale Hosp. & Med. Ctr.*, 204 AD2d 245, 246 [1994], *lv denied* 85 NY2d 805 [1995]). Indeed, as a Cayuga employee herself, King expressed awareness that some physicians who treated patients at Cayuga were not Cayuga employees but, rather, independent physicians with privileges to practice within Cayuga. Finally, we have previously held that a physician's use of a hospital's stationery, without more, is insufficient to satisfy the holding out portion of the test (*see Nagengast v Samaritan Hosp.*, 211 AD2d 878, 879-880 [1995]; *cf. Torns v Samaritan Hosp.*, 305 AD2d 965, 967 [2003]).

We find plaintiff's reliance on those cases involving emergency room settings to be distinguishable. In that line of cases we have held that "a hospital may be held vicariously liable for the acts of independent physicians if the patient enters the hospital through the emergency room and seeks treatment from the hospital, not from a particular physician" (*Citron v Northern Dutchess Hosp.*, 198 AD2d 618, 620 [1993], *lv denied* 83 NY2d 753 [1994]). Here, by contrast, plaintiff knowingly sought treatment from an independent surgeon who admitted her to Cayuga. That plaintiff may have suffered injury at the hands of another physician practicing at Cayuga, does not automatically alter the relationship between plaintiff and Cayuga; plaintiff did not enter the hospital based on a proffer by the hospital to the public to provide anesthesiology services but, rather, because her surgeon chose the hospital as the setting for her surgery (*cf. id.*; *Casucci v Kenmore Mercy Hosp.*, 144 AD2d 910, 911 [1988]; *Mduba v Benedictine Hosp.*, 52 AD2d 450, 454 [1976]).

Further, the record evidence belies plaintiff's contention that she and King relied on their belief that Mitchell was a Cayuga employee in accepting his services. Although King stated that she assumed Mitchell was a Cayuga employee, she admitted

that the issue of whether he was an employee or an independent contractor did not play a role in her decision to accept his services as the anesthesiologist for plaintiff's surgery. Thus, no basis exists on this record upon which a factfinder could reach the conclusion that plaintiff relied upon a perceived employment relationship with Cayuga in accepting Mitchell's services, defeating her claim based on an ostensible agency theory (*see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 252 n 3 [2002], *supra*; *Nagengast v Samaritan Hosp., supra* at 880; cf. *Hill v St. Clare's Hosp.*, 67 NY2d 72, 82 [1986], *supra*).

Mercure, J.P., Peters, Rose and Kane, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, and partial summary judgment awarded to defendant Cayuga Medical Center at Ithaca dismissing the vicarious liability cause of action.