JOE DRAGOTTA et al., Respondents, v SOUTHAMPTON HOSPITAL, Appellant, et al., Defendants. [833 NYS2d 638]—

In an action, inter alia, to recover damages for medical malpractice and wrongful death, the defendant Southampton Hospital appeals, as limited by its brief, from so much of an order of the Supreme Court, Suffolk County (Oliver, J.), dated July 6, 2005, as denied those branches of its motion which were for summary judgment dismissing the causes of action alleging malpractice and negligence against it and its staff and alleging that it was vicariously liable for the malpractice and negligence of the defendants Juan Gargiulo and Vida Rashidfarok Yasmin.

Ordered that the order is affirmed insofar as appealed from, with costs.

On August 15, 1997 the decedent Francis J. Dragotta underwent a revision of a knee replacement procedure that had been performed in January 1996. Dragotta also underwent arthroscopic surgery on his left knee in January 1995 and June 1995. All of these procedures were performed at the facility of the appellant Southampton Hospital (hereinafter the Hospital) by the defendant Leonard Leonardi, a private attending orthopedic surgeon. After the August 1997 procedure had been completed, Dragotta was given "patient-controlled" Demerol to

relieve post-operative pain, as well as additional doses of Demerol. Dragotta was awake and able to talk after the surgery. However, approximately 2½ hours after the surgery, Dragotta had difficulty breathing, and despite efforts to revive him, he died. The plaintiffs commenced this action against, among others, the Hospital, the decedent's orthopedic surgeon, his internist, and the two anesthesiologists who were assigned to his case, the defendants Juan Gargiulo and Vida Rashidfarok Yasmin. The plaintiffs contended, inter alia, that the administration of Demerol to the decedent, who had chronic obstructive pulmonary disease, caused his death.

The Hospital subsequently moved, among other things, for summary judgment dismissing the complaint insofar as asserted against it. The Supreme Court, among other things, denied the motion insofar as it sought dismissal of the causes of action alleging that the Hospital was vicariously liable for the malpractice and negligence of Gargiulo and Yasmin, and the causes of action alleging that the Hospital and its staff had committed malpractice and were negligent. We affirm.

In general, "a hospital may not be held [liable] for the acts of an [anesthesiologist] who was not an employee of the hospital, but one of a group of independent contractors" (*Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]). Nor may a hospital be held vicariously liable for the malpractice of a private attending physician who is not its employee (*see Quezada v O'Reilly-Green*, 24 AD3d 744, 746 [2005]; *Christopherson v Queens-Long Is. Med. Group, P.C.*, 17 AD3d 393, 394 [2005]). However, vicarious liability for the medical malpractice of an independent, private attending physician may be imposed under a theory of apparent or ostensible agency by estoppel (*see Hill v St. Clare's Hosp., supra; Hannon v Siegel-Cooper Co.*, 167 NY 244 [1901]; *King v Mitchell*, 31 AD3d 958, 959 [2006]). In order to create such apparent agency, there must be words or conduct of the principal, communicated to a third party, which give rise to the appearance and belief that the agent possesses the authority to act on behalf of the principal. The third party must reasonably rely on the appearance of authority, based on some misleading words or conduct by the principal, not the agent. Moreover, the third party must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal, and not in reliance on the agent's skill (*see Hallock v State of New York*, 64 NY2d 224, 231 [1984]; *Ford v Unity Hosp.*, 32 NY2d 464, 473 [1973]; *King v Mitchell, supra* at 959; *Searle v Cayuga Med. Ctr. at Ithaca*, 28 AD3d 834, 836 [2006]).

There are two elements to such a claim of apparent or

ostensible agency. To establish the "holding out" element, the misleading words or conduct must be attributable to the principal. To establish the "reliance" element, the third party must accept the agent's services and submit to the agent's care in reliance on the belief that the agent was an employee of the principal (*id.* at 836-837). In the context of a medical malpractice action, the patient must have reasonably believed that the physicians treating him or her were provided by the hospital or acted on the hospital's behalf (*see Dolan v Jaeger,* 285 AD2d 844, 846 [2001]; *Gunther v Staten Is. Hosp.,* 226 AD2d 427, 428 [1996]).

In this case, the Hospital, as the proponent of the motion for summary judgment, established its prima facie entitlement to judgment as a matter of law by presenting evidence that the anesthesiologists were not employees of the Hospital but part of an independent group of anesthesiologists, which billed all patients at the Hospital separately for its services (*see Alvarez v Prospect Hosp.,* 68 NY2d 320, 324-325 [1986]; *cf. Filemyr v Lombardo,* 11 AD3d 581 [2004]). However, in response, the plaintiffs raised triable issues of fact as to whether the Hospital may be vicariously liable for the alleged malpractice and negligence of the anesthesiologists under a theory of apparent or ostensible agency (*see Alvarez v Prospect Hosp., supra; cf. Chance v Felder,* 33 AD3d 645 [2006]). A contract between the Hospital and the anesthesiology group which employs Gargiulo and Yasmin specified that the Hospital will only use anesthesiologists from that group to provide anesthesiology services in the Hospital, and the anesthesiologists in the group are prohibited from practicing anywhere but the Hospital without its prior written approval. The contract also directed the group to nominate one of their members to act as the Hospital's Director of the Department of Anesthesiology. All of the forms and questionnaires used by the anesthesiologists, including a "Patient Education" form which the decedent filled out and signed, bear the logo or letterhead of the Hospital. The decedent did not meet Gargiulo until the day of the surgery, and he never met Yasmin, who took over for Gargiulo during the surgery. Moreover, there is evidence in the record that the decedent may have had pre-operative testing by an anesthesiologist at the Hospital, not at the offices of the anesthesiology group. None of the Hospital's patients, including the decedent, were ever informed that the anesthesiologists were not employed by the Hospital.

The fact that the anesthesiologists must practice exclusively at the Hospital absent written approval by the Hospital, and

that the Hospital may only use the group's anesthesiologists, raises a triable issue of fact as to whether the Hospital was holding itself out as a provider of anesthesia services, notwithstanding that the anesthesiologists were not employees of the Hospital, a fact that was never disclosed to any of the Hospital's patients. The fact that all of the forms and questionnaires used by the anesthesiologists bear the logo of the Hospital, including those filled out and signed by the decedent, together with evidence that pre-anesthesia testing of the decedent may have taken place at the Hospital, raises a triable issue of fact as to whether the decedent reasonably believed that the anesthesiologists were provided by the Hospital or acted on its behalf (*see Searle v Cayuga Med. Ctr. at Ithaca, supra; cf. Dolan v Jaeger, supra; Gunther v Staten Is. Hosp., supra; King v Mitchell, supra*). Thus, that branch of the motion which was for summary judgment dismissing the causes of action alleging vicarious liability for the malpractice and negligence of Gargiulo and Yasmin was properly denied.

The branch of the motion which was for summary judgment dismissing the causes of action alleging malpractice and negligence against the Hospital and its staff also was properly denied. The defendant failed to establish its prima facie entitlement to judgment as a matter of law with respect to the claims that a proper pre-anesthesia examination was not conducted, that the results of that examination should have been recorded in the decedent's hospital chart, and that the charts from the prior procedures the decedent underwent at the Hospital should have been kept together with the August 1997 chart (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). With respect to the other claims of malpractice against the Hospital and its staff, the Hospital established its prima facie entitlement to judgment as a matter of law. In response, the plaintiffs raised triable issues of fact as to whether the decedent was properly discharged from an acute care unit to a regular hospital room after the surgery, and whether he was properly monitored thereafter (*see Alvarez v Prospect Hosp., supra*).

The Hospital's remaining contentions are without merit. Rivera, J.P., Dillon, Angiolillo and Dickerson, JJ., concur.