■ KENNETH ST. ANDREWS, Respondent, v STEVEN V. SCALIA et al., Defendants, and GLENS FALLS HOSPITAL, Appellant. [857 NYS2d 807]—

Spain, J. Appeal from an order of the Supreme Court (Krogmann, J.), entered May 31, 2007 in Warren County, which partially denied a motion by defendant Glens Falls Hospital for summary judgment dismissing the complaint against it.

On August 2, 2002, plaintiff underwent a surgical hernia

repair performed by defendant Steven V. Scalia, plaintiff's surgeon, who was assisted by defendant Gordon W. Single, also a surgeon, at defendant Glens Falls Hospital (hereinafter the hospital). Scalia and Single, independent physicians employed by defendant Baywood Surgical Associates, P.C. (hereinafter BSA), had staff privileges at the hospital and rotated with other surgeons for "on call" duty at the hospital emergency room. Plaintiff was discharged two days after the surgery, with instructions from Scalia to follow up with an office appointment in two weeks. On August 5, 2002, the day after his discharge, plaintiff went to the hospital's emergency room complaining of abdominal pain and other postoperative complications. He signed the hospital's consent to treat form, and was treated by Single (and possibly other emergency room physicians) and discharged hours later.

Plaintiff remained at home attempting to recover until August 18, 2002, when he went to the hospital emergency room and was then admitted by Scalia with a diagnosis of intra-abdominal abscess secondary to bowel fistula. Scalia performed surgery to rid plaintiff of the infection and performed an ileostomy; plaintiff remained hospitalized for weeks and, subsequently, underwent additional surgeries and procedures by another physician at a different hospital.

Plaintiff commenced this negligence action against the hospital, Scalia, BSA and Single, and has reportedly settled all claims against Scalia, Single and BSA. The hospital moved for summary judgment dismissing the claims against it. Supreme Court—as relevant here—* denied the motion with respect to plaintiff's claim that the hospital is vicariously liable for Single's medical malpractice in the emergency room for failing to diagnose and treat his postoperative complications. The hospital now appeals.

Under settled principles, a hospital is not ordinarily liable for the negligent acts of an independent treating physician who is not an employee of the hospital but, rather, is part of an independent group of physicians, except under an ostensible/apparent agency theory, i.e., where the hospital's words or conduct communicated to a third-party patient give rise to the

---

* The hospital also moved for dismissal of plaintiff's malpractice claim against it based upon Scalia's original August 2, 2002 surgery, which plaintiff did not oppose, and defendant was awarded partial summary judgment on that claim.

appearance and belief that the agent-independent physician possesses authority to act on behalf of the hospital (*see Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d 934, 935-936 [2007], *lv denied* 9 NY3d 807 [2007]; *cf. Imbierowicz v A.O. Fox Mem. Hosp.*, 43 AD3d 503, 507 [2007]). Pursuant to that theory, under the emergency room doctrine, "a hospital may be held vicariously liable for the acts of [an] independent physician[ ] if the patient *enters the hospital through the emergency room* and *seeks treatment from the hospital*, not from a particular physician" (*Citron v Northern Dutchess Hosp.*, 198 AD2d 618, 620 [1993], *lv denied* 83 NY2d 753 [1994] [emphases added]; *accord Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d at 936-937; *Monostori v Murphy*, 34 AD3d 882, 883 [2006]; *King v Mitchell*, 31 AD3d 958, 960 [2006]).

The hospital, as the proponent of the motion, established that Single was not its employee, but failed to demonstrate the inapplicability of the emergency room doctrine by submitting proof that plaintiff, who entered and was treated at its emergency room on August 5, 2002, sought treatment only from Single and not from the hospital (*see Payant v Imobersteg*, 256 AD2d 702, 703-704 [1998]; *compare Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d at 936-937). The hospital's proof in support of its motion failed to establish the circumstances under which Single came to treat plaintiff in the emergency room on August 5. Indeed, Single—who was covering for Scalia that day—had no specific recollection of whether he was on call in the emergency room and treated plaintiff in that capacity, if the emergency room contacted him directly (due, for example, to his role as the assisting surgeon in the recent surgery or as the physician covering Scalia), or if plaintiff requested him. No one testified that plaintiff specifically requested or consented to being treated by Single. The emergency room medical records are equivocal, indicating in several places in type that the admitting and attending doctor is "unknown," reflecting that plaintiff did not give Single's name when he presented to the emergency room and, later, an unidentified person handwrote Single's name over "unknown." The hospital submitted no evidence that plaintiff had ever met Single, was aware that Single had assisted in his August 2, 2002 surgery or that Single was not a hospital employee or was affiliated with BSA or Scalia, or that plaintiff had any known physician-patient relationship with Single. While plaintiff's testimony may support the conclusion that Scalia's office was called by plaintiff's family before he was taken to the emergency room on August 5, 2002, there is no evidence that plaintiff was directed by anyone at BSA to go to this

particular emergency room (or to meet Single at the emergency room), that plaintiff was told that Single was covering for Scalia or was on call, or that plaintiff requested Single when he presented at the emergency room. Thus, the hospital failed to submit prima facie proof entitling it to summary judgment on plaintiff's claim against it premised upon its vicarious liability for Single's alleged negligence on August 5.

Moreover, plaintiff's testimony and affidavit offered in opposition, if credited, would establish that he did not request Single or know Single or that Single had assisted in the surgery and was Scalia's partner, until after the August 5, 2002 emergency room treatment and discharge. He asserted that he had sought treatment at the emergency room from the hospital. Given that plaintiff presented to the emergency room, and that his proof would support the conclusion that he did not knowingly seek treatment from an independent physician or any particular physician, a jury could conclude that plaintiff "reasonably believed that he was receiving medical care from the hospital in general rather than from a particular physician" (*Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d at 937; *see Monostori v Murphy*, 34 AD3d at 883-884; *cf. King v Mitchell*, 31 AD3d at 960-961). As plaintiff raised triable issues of fact as to whether the hospital may be vicariously liable for Single's alleged negligence, Supreme Court properly denied that part of the hospital's motion for summary judgment dismissing this claim.

Cardona, P.J., Mercure, Lahtinen and Kavanagh, JJ., concur. Ordered that the order is affirmed, with costs.