■ STELLA BRINK, Respondent, v REID T. MULLER et al., Defendants, and COMMUNITY MEMORIAL HOSPITAL, INC., Appellant. [927 NYS2d 719]—

Egan Jr., J.

In October 2004, plaintiff presented at the emergency room of defendant Community Memorial Hospital, Inc. (hereinafter defendant) in the Town of Hamilton, Madison County, with symptoms consistent with a stroke. Following an initial evaluation by a registered physician's assistant, plaintiff was sent for a CAT scan and Ellen Larson, the "on call" physician, was contacted. Larson, a family practitioner at Bassett Hospital in the Village of Cooperstown, Otsego County, was not employed by defendant but had been granted staff privileges at the facil-

ity, which required her to participate in defendant's emergency room on-call program.

During the course of plaintiff's treatment, a question arose as to whether she should be given a tissue plasinogen activator (hereinafter TPA), otherwise known as a clot buster. As defendant, a small community hospital, apparently did not have a neurologist on call, Larson telephoned Michael Miller, the on-call neurologist at Bassett Hospital, who advised against the administration of TPA.[1] Upon informing plaintiff's daughter of Miller's assessment, the daughter, who was a resident at St. Joseph's Hospital in the City of Syracuse, Onondaga County, asked Larson to contact that facility for a second opinion. Larson then spoke with Hassan Shukri, the on-call neurologist at St. Joseph's, who agreed that TPA should not be given to plaintiff.

Although plaintiff evidenced significant improvement following her initial admission, her condition thereafter deteriorated and she apparently suffered a second and allegedly debilitating stroke the following day, prompting her to commence this medical malpractice action against, among others, defendant.[2] The matter proceeded to trial in December 2009 and, prior to the testimony of plaintiff's expert witness, defendant sought a ruling that it was not liable for the opinions provided by Miller and Shukri during the course of Larson's treatment of plaintiff. The trial was adjourned and, following a hearing on defendant's subsequent motion in limine, Supreme Court granted the motion as to Shukri but denied the motion as to Miller, finding that the record presented a question of fact as to whether defendant could be held vicariously liable for Miller's advice. Defendant now appeals from that part of Supreme Court's order denying the requested relief as to Miller.

The crux of the issue on appeal is whether defendant may be held liable for the allegedly negligent opinion rendered by Miller regarding the advisability of administering TPA to plaintiff. For the reasons that follow, we agree with Supreme Court that the extent of defendant's liability, if any, cannot be definitively resolved on the scant record before us and, accordingly, defendant's motion in limine was properly denied.

As a general proposition, "a hospital may not be held liable

---

1. Miller was not employed by defendant and was contacted by Larson based upon her personal "default protocol," whereby she would reach out to physicians at Bassett Hospital when she was in need of advice.

2. Plaintiff also commenced this action against defendants Reid T. Muller, her treating cardiologist, and SJH Cardiology Associates, P.C., but thereafter executed a stipulation of discontinuance as to them.

for the malpractice of a physician who is not [its] employee" (*Citron v Northern Dutchess Hosp.*, 198 AD2d 618, 620 [1993], *lv denied* 83 NY2d 753 [1994]; *see Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d 934, 935 [2007], *lv denied* 9 NY3d 807 [2007]). However, an exception to this general rule exists where a patient comes into a hospital emergency room seeking treatment from the hospital itself rather than a physician of the patient's own choosing (*see Schultz v Shreedhar*, 66 AD3d 666, 666 [2009]; *Sampson v Contillo*, 55 AD3d 588, 589 [2008]; *St. Andrews v Scalia*, 51 AD3d 1260, 1261 [2008]; *Citron v Northern Dutchess Hosp.*, 198 AD2d at 620; *Mduba v Benedictine Hosp.*, 52 AD2d 450, 453 [1976]), in which case liability may be imposed under an apparent or ostensible agency theory. "Essential to the creation of apparent [agency] are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to act on behalf of the principal" (*Searle v Cayuga Med. Ctr. at Ithaca*, 28 AD3d 834, 836 [2006] [internal quotation marks and citation omitted]; *see Sampson v Contillo*, 55 AD3d at 590; *St. Andrews v Scalia*, 51 AD3d at 1261-1262; *Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d at 935-936; *King v Mitchell*, 31 AD3d 958, 959 [2006]). Specifically, "[i]n the context of a medical malpractice action, the patient must have reasonably believed that the physicians treating him or her were provided by the hospital or acted on the hospital's behalf" (*Dragotta v Southampton Hosp.*, 39 AD3d 697, 699 [2007]; *see Sampson v Contillo*, 55 AD3d at 590) and, further, must have accepted the physicians' services in reliance not upon their particular skill but, rather, based upon their relationship with the underlying hospital (*see Searle v Cayuga Med. Ctr. at Ithaca*, 28 AD3d at 836). In assessing the reasonableness of such a belief, we must consider "all [the] attendant circumstances" (*Sampson v Contillo*, 55 AD3d at 590 [internal quotation marks omitted]).

Applying these principles to the matter before us, we are persuaded that the record as a whole presents a question of fact as to whether defendant may be held vicariously liable for Miller's alleged negligence.[3] In this regard, defendant correctly notes that there is evidence in the record that militates against such a finding, including the fact that Miller was not present in the emergency room at the time of plaintiff's admission, did not personally examine her and, apparently, only consulted with

---

3. Defendant does not dispute that it is responsible for Larson's actions.

Larson briefly via telephone from another hospital.[4] On this latter point, it is clear that Larson contacted Miller pursuant to her own "default protocol," a procedure via which she would reach out to a specialist at Bassett Hospital if she needed advice.[5] What is not clear, however, is whether plaintiff's daughter[6] was aware of the actual relationship (or the alleged lack thereof) between Miller and defendant. Absent more detailed testimony in this regard, we are unable to ascertain whether, based upon due consideration of all the relevant circumstances then existing, plaintiff's daughter reasonably could have believed that Miller had been furnished by defendant or was acting on defendant's behalf.

In so holding, we recognize that plaintiff's daughter indeed was advised by Larson that Miller had been contacted at Bassett Hospital, but this only begs the question of whether—notwithstanding that disclosure—it was reasonable for her to infer that he had been consulted at defendant's behest or otherwise was acting on its behalf. Further, while we acknowledge that defendant was not "obligated to affirmatively disclaim [Miller] as an employee in order to avoid the creation of ostensible agency" (*King v Mitchell*, 31 AD3d at 960; *accord Thurman v United Health Servs. Hosps., Inc.*, 39 AD3d at 936), we nonetheless are persuaded that a question of fact remains regarding whether plaintiff or her daughter reasonably could have believed that Miller was acting on defendant's behalf and reasonably relied upon such belief when accepting services from defendant. Accordingly, defendant's motion was properly denied (*cf. St. Andrews v Scalia*, 51 AD3d at 1262-1263; *Monostori v Murphy*, 34 AD3d 882, 883-884 [2006]; *Lewis v Manis*, 266 AD2d 844, 845 [1999]).

As a final matter, our decision in this regard should in no way be construed as standing for the proposition that any sort of telephone consultation between colleagues in an emergency room setting necessarily exposes the admitting hospital to vicarious liability for any opinion rendered by the physician so consulted. To the contrary, our holding here simply reflects the

---

**4.** Larson also testified that, to her knowledge, Miller did not have staff privileges with defendant.

**5.** Larson testified that defendant never instructed her as to how she should proceed in the event that a need for a consult arose and, to her knowledge, did not have an established on-call consultation policy or any arrangement with Bassett Hospital for that purpose.

**6.** It appears that plaintiff was incapacitated at this point in time and, therefore, it was her daughter (and the apparent holder of her healthcare proxy) with whom Larson shared Miller's opinion regarding the administration of TPA.

sparse record before us and the corresponding questions of fact it presents.

Mercure, J.P., Spain, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, with costs.