Pasek v Catholic Health Sys., Inc. (2021 NY Slip Op 03680)





Pasek v Catholic Health Sys., Inc.


2021 NY Slip Op 03680


Decided on June 11, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, WINSLOW, AND BANNISTER, JJ.


86 CA 19-01845

[*1]JULIE E. PASEK, INDIVIDUALLY, AND AS POWER OF ATTORNEY FOR JAMES G. PASEK, PLAINTIFF-APPELLANT,
v
CATHOLIC HEALTH SYSTEM, INC., MERCY HOSPITAL OF BUFFALO, DEFENDANTS-RESPONDENTS, ET AL., DEFENDANTS. 






BROWN CHIARI LLP, BUFFALO (ANGELO S. GAMBINO OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
BARGNESI BRITT PLLC, BUFFALO (JASON T. BRITT OF COUNSEL), FOR DEFENDANTS-RESPONDENTS. 


 Appeal from an order of the Supreme Court, Erie County (Donna M. Siwek, J.), entered August 27, 2019. The order granted the motion of defendants Catholic Health System, Inc., and Mercy Hospital of Buffalo for summary judgment dismissing plaintiff's vicarious liability claims against them. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff, individually, and as power of attorney for her husband, James G. Pasek, commenced this medical malpractice action seeking damages for injuries sustained by Pasek, who was admitted to defendant Mercy Hospital of Buffalo (Mercy Hospital) for mitral valve repair surgery in February 2014. Serious complications occurred during the surgery and, during the post-operative period, Pasek was placed on a ventilator and an extracorporeal membrane oxygenation (ECMO) system, which mechanically circulated his blood outside his body through an artificial lung. A few days after the surgery, Pasek's condition deteriorated and he was emergently transported from the open heart unit to the operating room. During the transport, the ECMO tubing became unintentionally disconnected, and Pasek subsequently suffered, among other things, massive blood loss, hypoxic brain injury due to a lack of oxygen, and occipital lobe damage. Plaintiff appeals from an order that granted the motion of defendants Catholic Health System, Inc. and Mercy Hospital (collectively, Mercy defendants) for summary judgment dismissing plaintiff's vicarious liability claims against them. We affirm.
Plaintiff contends that Supreme Court erred in granting the motion because questions of material fact exist whether Mercy Hospital exercised control over defendants John Bell-Thomson, M.D., George R. Bancroft, M.D., and Support Services of WNY, LLC (Support Services), and whether Mercy Hospital held out those defendants as apparent agents of Mercy Hospital, such that the Mercy defendants may be vicariously liable for their conduct. We reject that contention. "[I]t is well settled that, '[i]n general, a hospital may not be held vicariously liable for the malpractice of a private attending physician who is not an employee' " (Lorenzo v Kahn, 74 AD3d 1711, 1712-1713 [4th Dept 2010]; see Wulbrecht v Jehle, 92 AD3d 1213, 1214 [4th Dept 2012]). A hospital may be liable for the negligence of an independent physician, however, if the hospital "maintained control over the manner and means of the physician's work" (Torns v Samaritan Hosp., 305 AD2d 965, 967 [3d Dept 2003]; see Nagengast v Samaritan Hosp., 211 AD2d 878, 878-879 [3d Dept 1995]). "The test employed is one of control in respect to the manner in which the work is to be done" (Mduba v Benedictine Hosp., 52 AD2d 450, 452 [3d Dept 1976]).
"[V]icarious liability for the medical malpractice of an independent, private attending physician may [also] be imposed under a theory of apparent or ostensible agency by estoppel" (Dragotta v Southampton Hosp., 39 AD3d 697, 698 [2d Dept 2007]; see Diller v Munzer, 141 AD3d 628, 629 [2d Dept 2016]; Thurman v United Health Servs. Hosps., Inc., 39 AD3d 934, 935-936 [3d Dept 2007], lv denied 9 NY3d 807 [2007]). "In order to create such apparent agency, there must be words or conduct of the principal, communicated to a third party, which give rise to the appearance and belief that the agent possesses the authority to act on behalf of the principal . . . , [and] the third party must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal" (Dragotta, 39 AD3d at 698; see Hallock v State of New York, 64 NY2d 224, 231 [1984]; Searle v Cayuga Med. Ctr. at Ithaca, 28 AD3d 834, 836 [3d Dept 2006], amended on rearg 2006 NY Slip Op 05866 [3d Dept 2006]). "In the context of a medical malpractice action against a hospital, the patient must have reasonably believed that the physicians treating him or her were provided by the hospital or acted on the hospital's behalf" (Keesler v Small, 140 AD3d 1021, 1022 [2d Dept 2016]).
With respect to plaintiff's claim that the Mercy defendants are vicariously liable for the conduct of Bell-Thomson, the Mercy defendants submitted evidence establishing that Bell-Thomson was not an employee of Mercy Hospital and that Mercy Hospital did not control his work. The Mercy defendants' submissions included Bell-Thomson's deposition testimony, which established that he had his own practice. The Mercy defendants also submitted a letter from Bell-Thomson to Pasek, which explained that Bell-Thomson and members of his team would coordinate Pasek's care, that Mercy Hospital would not be directly overseeing or coordinating Pasek's care during his admission to the hospital, and that Mercy Hospital would not be actively involved in arranging for Pasek's incidental care, which might involve other medical specialties such as anesthesiology and perfusion services (see Giambona v Hines, 104 AD3d 807, 811 [2d Dept 2013]; Nagengast, 211 AD2d at 879).
The Mercy defendants also established they are not liable for Bell-Thomson's conduct under a theory of apparent agency. In support of their motion, they submitted the deposition testimony of plaintiff, which established that Pasek selected Bell-Thomson to perform the surgery because he was the only local surgeon who could perform the surgery robotically. Inasmuch as the Mercy defendants established that Pasek procured Bell-Thomson's services independently, and that Bell-Thomson performed Pasek's surgery with physicians and specialists that he coordinated, we conclude that the Mercy defendants established that Pasek could not have reasonably believed that the Mercy defendants chose Bell-Thomson to treat Pasek or that Bell-Thomson was acting on behalf of Mercy Hospital (see Thurman, 39 AD3d at 937).
In opposition to the motion, plaintiff failed to raise a triable issue of fact whether Mercy Hospital exercised control over the manner and means of Bell-Thomson's work (see Nagengast, 211 AD2d at 879), or whether the Mercy defendants are liable under a theory of apparent agency (cf. Keesler, 140 AD3d at 1022-1023; Dragotta, 39 AD3d at 699). To the extent that plaintiff contends that the failure of the Mercy defendants to submit Mercy Hospital's contract with Bell-Thomson creates a question of fact, we note that the facts necessary to establish a relationship of control between Mercy Hospital and Bell-Thomson were not exclusively within the control of Mercy Hospital, and plaintiff's failure to ascertain the facts was due to her own inaction (see Sheehan v Columbia Presbyt. Med. Ctr., Presbyt. Hosp. in City of N.Y., 182 AD2d 556, 556 [1st Dept 1992]).
With respect to the claim that the Mercy defendants have vicarious liability for the conduct of Bancroft, we reject plaintiff's contention that the Mercy defendants failed to meet their initial burden on their motion. "Generally, a hospital may not be held liable for the acts of an anesthesiologist who was not an employee of the hospital, but was one of a group of independent contractors" (Keesler, 140 AD3d at 1022; see Hill v St. Clare's Hosp., 67 NY2d 72, 79 [1986]), unless there was apparent agency between the hospital and anesthesiologist or the hospital exercised control over the anesthesiologist (see Sklarova v Coopersmith, 180 AD3d 510, 512 [1st Dept 2020]; Brown v LaFontaine-Rish Med. Assoc., 33 AD3d 470, 471 [1st Dept 2006]; Litwak v Our Lady of Victory Hosp. of Lackawanna, 238 AD2d 881, 881 [4th Dept 1997]). Here, the Mercy defendants established through the submission of Bancroft's deposition testimony that Bancroft was a member of an independent group of anesthesiologists and not an employee of Mercy Hospital (see Sampson v Contillo, 55 AD3d 588, 590-591 [2d Dept 2008]; cf. Dupree v Westchester County Health Care Corp., 164 AD3d 1211, 1213-1214 [2d Dept 2018]).
Contrary to plaintiff's contention, the Mercy defendants' submissions did not raise a question of fact whether Mercy Hospital held out Bancroft as an employee and whether Pasek reasonably relied upon that misrepresentation in accepting Bancroft's medical services (see generally King v Mitchell, 31 AD3d 958, 959-960 [3d Dept 2006]). The presence of the Catholic Health logo on the anesthesia records is insufficient to establish that Mercy Hospital held out Bancroft as its employee (see Thurman, 39 AD3d at 936; King, 31 AD3d at 960; Nagengast, 211 AD2d at 879; cf. Dragotta, 39 AD3d at 699-700) and, although Pasek did not specifically request the services of Bancroft, Bancroft's presence at Mercy Hospital is insufficient to raise a question of fact whether Mercy Hospital held him out as an employee of the hospital (see Thurman, 39 AD3d at 936). Indeed, the Mercy defendants' submissions established that Bell-Thomson chose Mercy Hospital as the setting for Pasek's surgery and advised Pasek that he would ask one or more specialist consultants to assist with Pasek's care.
With respect to the claim of vicarious liability for the conduct of Support Services, the Mercy defendants met their initial burden of establishing that Mercy Hospital did not employ Support Services or its employees (see generally Orgovan v Bloom, 7 AD3d 770, 771 [2d Dept 2004]) and did not exercise control over them (see Dolan v Jaeger, 285 AD2d 844, 846 [3d Dept 2001]; cf. Contreras v Adeyemi, 102 AD3d 720, 722-723 [2d Dept 2013]). The Mercy defendants submitted the deposition testimony of several employees of Support Services and the contract between Support Services and Mercy Hospital, which established that Support Services controlled the daily scheduling of its employees. Although the contract between Mercy Hospital and Support Services required that Support Services provide a perfusionist at Mercy Hospital at all times, Mercy Hospital did not control Support Services's staffing or billing. The contract and the deposition testimony established that Support Services maintained control over the scheduling of perfusionists and their respective assignments, as well as their ECMO training. Plaintiff failed to raise a triable issue of fact (see generally Nagengast, 211 AD2d at 879).
We have considered plaintiff's remaining contentions and conclude that none warrants modification or reversal of the order.
Entered: June 11, 2021
Mark W. Bennett
Clerk of the Court