Lewis v Sulaiman (2023 NY Slip Op 03167)

Lewis v Sulaiman

2023 NY Slip Op 03167

Decided on June 9, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, BANNISTER, MONTOUR, AND OGDEN, JJ.

1028 CA 21-01372

[*1]MARY BETH LEWIS, INDIVIDUALLY AND AS COURT- APPOINTED GUARDIAN OF THE PERSON AND PROPERTY OF KRISTINA MARIE LEWIS, PURSUANT TO ARTICLE 81 OF THE NEW YORK STATE MENTAL HYGIENE LAW, PLAINTIFF-RESPONDENT,
v
ROSALIND SULAIMAN, M.D., ET AL., DEFENDANTS, AND CHRISTOPHER M. OCCHINO, M.D., DEFENDANT-APPELLANT. (APPEAL NO. 1.) 

THE TARANTINO LAW FIRM, LLP, BUFFALO (MARYLOU K. ROSHIA OF COUNSEL), FOR DEFENDANT-APPELLANT.
CHERUNDOLO LAW FIRM, PLLC, SYRACUSE (PETER C. PAPAYANAKOS OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Frederick J. Marshall, J.), entered August 25, 2021. The order denied the motion of defendant Christopher M. Occhino, M.D. for summary judgment dismissing the amended complaint. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff commenced this medical malpractice action seeking damages for injuries sustained by her daughter, Kristina Marie Lewis, who was admitted to the emergency department at defendant Mercy Hospital of Buffalo (Mercy Hospital) after she suddenly went into cardiac arrest at plaintiff's home. At the emergency department, Lewis was treated by, among others, defendant Christopher M. Occhino, M.D., an independent contractor with privileges at Mercy Hospital. During the course of her treatment, Lewis was repeatedly defibrillated and remained in an obtunded or comatose state. Ultimately, as a result of the cardiac arrest, Lewis suffered a catastrophic brain injury due to lack of blood flow, causing her to remain in a permanent vegetative state that will require her to have 24-hour-a-day medical care for the rest of her life. As relevant on appeal, plaintiff alleges that Occhino was negligent in failing to treat Lewis with hypothermic therapy to cool her body and thereby prevent the lack of blood flow from causing damage. In appeal No. 1, Occhino appeals from an order that denied his motion for summary judgment dismissing the amended complaint against him. In appeal No. 2, Mercy Hospital and defendant Catholic Health System, Inc. (collectively, Mercy defendants) appeal from a separate order that, inter alia, denied that part of their motion seeking summary judgment dismissing plaintiff's claim that they are vicariously liable for Occhino's allegedly negligent conduct.
In appeal No. 1, Occhino contends that he did not depart from the applicable standard of care and that Supreme Court thus erred in denying his motion. On a motion for summary judgment in a medical malpractice action, a defendant has "the initial burden of establishing either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiff's injuries" (Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017] [internal quotation marks omitted]; see Isensee v Upstate Orthopedics, LLP, 174 AD3d 1520, 1521 [4th Dept 2019]). Once a defendant meets the initial burden, "[t]he burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact . . . only as to the elements on which the defendant met the prima facie burden" (Bubar v [*2]Brodman, 177 AD3d 1358, 1359 [4th Dept 2019] [internal quotation marks omitted]; see Bristol v Bunn, 189 AD3d 2114, 2116 [4th Dept 2020]).
We agree with Occhino that he satisfied his initial burden of demonstrating his compliance with the accepted standard of care by presenting factual evidence, including his own detailed affidavit, with accompanying medical records, that "address[ed] each of the specific factual claims of negligence raised in plaintiff's [amended] bill of particulars . . . and was detailed, specific and factual in nature" (Pasek v Catholic Health Sys., Inc., 186 AD3d 1035, 1036 [4th Dept 2020] [internal quotation marks omitted]; see Groff v Kaleida Health, 161 AD3d 1518, 1520 [4th Dept 2018]; Larsen v Banwar, 70 AD3d 1337, 1338 [4th Dept 2010]). In particular, Occhino opined that hypothermic therapy can be initiated only when the patient is hemodynamically stable. According to Occhino, Lewis never reached hemodynamic stability during the relevant time period because her cardiac status remained unstable and required multiple interventions, specifically in the form of shocks and defibrillations. Occhino thus concluded that hypothermic therapy was unwarranted and, in fact, was contraindicated.
We further conclude, however, that plaintiff raised a triable question of material fact with respect to Occhino's deviation from the standard of care by submitting the affidavits of experts in neurology and emergency medicine (see generally Clark v Rachfal, 207 AD3d 1173, 1175 [4th Dept 2022]; Mason v Adhikary, 159 AD3d 1438, 1439 [4th Dept 2018]), both of whom averred that Lewis was an appropriate candidate for hypothermic therapy because, while being treated by Occhino, she reached the necessary hemodynamic stability at a time when hypothermic therapy could be commenced. Contrary to Occhino's contention, this is not a case in which plaintiff's experts "misstate[d] the facts in the record," nor are their affidavits " 'vague, conclusory, speculative, [or] unsupported by the medical evidence in the record' " (Occhino, 151 AD3d at 1871; see generally Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]). Instead, on the question whether hypothermic therapy was contraindicated for Lewis while she was being treated by Occhino, this case presents "a classic battle of the experts that is properly left to a jury for resolution" (Blendowski v Wiese [appeal No. 2], 158 AD3d 1284, 1286 [4th Dept 2018] [internal quotation marks omitted]; see Mason, 159 AD3d at 1439). We have considered Occhino's remaining contention and conclude that it does not warrant modification or reversal of the order in appeal No. 1.
In appeal No. 2, the Mercy defendants contend that the court erred in denying their motion insofar as it sought summary judgment dismissing plaintiff's claim that the Mercy defendants may be held vicariously liable for Occhino's conduct. We reject that contention. Although a hospital generally " 'may not be held vicariously liable for the malpractice of a private attending physician who is not an employee' " (Lorenzo v Kahn, 74 AD3d 1711, 1712 [4th Dept 2010]; see Pasek v Catholic Health Sys., Inc., 195 AD3d 1381, 1381 [4th Dept 2021]; Wulbrecht v Jehle, 92 AD3d 1213, 1214 [4th Dept 2012]), "where a patient presents himself [or herself] at an emergency room, seeking treatment from the hospital and not from a particular physician of the patient's choosing, the hospital may be held vicariously liable for the malpractice of a physician who is an independent contractor" (Litwak v Our Lady of Victory Hosp. of Lackawanna, 238 AD2d 881, 881 [4th Dept 1997]; see Goffredo v St. Luke's Cornwall Hosp., 194 AD3d 699, 700 [2d Dept 2021]; see generally Mduba v Benedictine Hosp., 52 AD2d 450, 452 [3d Dept 1976]).
Here, the Mercy defendants did not meet their initial burden on the motion because the record does not establish that Lewis presented at the emergency room seeking treatment from Occhino specifically, rather than Mercy Hospital in general. The Mercy defendants' own submissions establish that at the time Lewis arrived at the emergency room, she was unconscious, suffering from cardiac arrest, and had been transported to Mercy Hospital by ambulance. Indeed, plaintiff testified that, although she asked the ambulance personnel to take Lewis to another hospital, they told her that they were required to take her to Mercy Hospital. Thus, as the Mercy defendants' own submissions establish, it was impossible for Lewis to have specifically sought treatment from Occhino rather than the hospital in general. Therefore there remain triable issues of fact whether the Mercy defendants could be held vicariously liable for Occhino's actions, and the court properly denied the Mercy defendants' motion with respect to plaintiff's vicarious liability claim (see generally Goffredo, 194 AD3d at 700; Litwak, 238 AD2d at 881). We also reject the Mercy defendants' contention that plaintiff's general knowledge of the relationship between hospitals and the doctors they employ established her actual knowledge [*3]that Occhino was not an agent of Mercy Hospital for purposes of the Mercy defendants' motion. Inasmuch as the Mercy defendants failed to establish that plaintiff had knowledge of Occhino's specific relationship to Mercy Hospital, a question of fact remains whether plaintiff reasonably could have believed that Occhino was acting on Mercy Hospital's behalf and whether she reasonably relied on that belief when accepting services from Mercy Hospital to treat Lewis (see generally Brink v Muller, 86
AD3d 894, 897 [3d Dept 2011]).
Entered: June 9, 2023
Ann Dillon Flynn
Clerk of the Court